**UNITED STATES of America ex rel. Russell Davis MEALEY, Jr., Petitioner,**

v.

**The STATE OF DELAWARE, Respondent.**

**No. 170.**

United States District Court, D. Delaware.

Dec. 8, 1972.

---

Bernard Balick, Wilmington, Del., for petitioner.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for respondent.

EDWIN D. STEEL, District Judge.

Russell Davis Mealey, Jr., a State prisoner, proceeding *in forma pauperis,* has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The present litigation arises out of the following circumstances:

On September 17, 1969, at approximately 3:00 a. m., a 76 year old woman was beaten and raped in her home by an assailant who gained entry by breaking through a boarded bathroom window. Mealey, the petitioner, was arrested later in the morning. He was then indicted, tried and convicted by a jury of the Superior Court of Delaware for the commission of two statutory felonies—rape under 11 Del.C. § 781, and breaking and entering under 11 Del.C. § 397. On September 25, 1970, the Superior Court sentenced Mealey to concurrent terms of life and three years imprisonment, respectively, for these crimes. The conviction was affirmed by the Supreme Court of Delaware in an unreported opinion, Mealey v. State of Delaware, No. 183, 1970 (1971). The United States Supreme Court denied certiorari in Mealey v. Delaware, 406 U.S. 930, 92 S.Ct. 1781, 32 L.Ed.2d 133 (1972) with Justice Douglas alone in favor of granting certiorari. The pending petition was then filed.

Since his conviction Mealey has been in the custody of respondent at the Delaware Correctional Center. Jurisdiction exists under 28 U.S.C. § 2241 and the requisite exhaustion of State remedies mandated by 28 U.S.C. § 2254 has been shown.

Essentially, Mealey argues that the conviction should be set aside because it was supported by substantial error in three constitutional respects: (1) incriminating evidence obtained from Mealey without a search warrant and as an incident to an illegal arrest was erroneously admitted at trial in violation of the "search and seizure" clause of the fourth amendment; (2) while in custody of the police and unrepresented by an attorney Mealey gave incriminating statements which were admitted in evidence in violation of his due process rights under the fourteenth amendment [1] without his validly waiving those rights; and (3) the photographic procedure which the State used to identify Mealey was in violation of his due process

---

1. The fourteenth amendment has been interpreted to make the fifth amendment right against self-incrimination and the sixth amendment right to counsel obligatory upon the States.

rights under the fourteenth amendment and was not "harmless error".

Only points (1) and (2) will be dealt with in this opinion. Consideration of point (3) will be deferred until after the resolution of these points following an evidentiary hearing which, for reasons herein stated, must be held.

### The Legality of the Arrest and Introduction of Evidence Obtained As An Incident To It

Officers Astfalk and Hedrick arrested Mealey at approximately 9:00 a. m. on September 17, 1969. They immediately searched him and took a cigarette lighter from him. When the lighter was offered in evidence [2] Mealey moved to suppress it on the ground that the officer should have had a search warrant with him. Mealey's objection to the introduction of the lighter was overruled.

■ If the arrest was valid, the ruling of the trial court was right. The seizure of the lighter was incident to the arrest. Where one has been placed in the custody of the law by valid action of officers, "[t]here is ample justification . . . for a search of the arrestee's person. . . ." Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Under such circumstances a search warrant is not necessary because "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." 395 U.S. at 763, 89 S.Ct. at 2040.

■ Here Mealey claims that the arrest was invalid because made under an invalid warrant. The warrant was issued by Magistrate Levenberg. He issued it solely upon the basis of a complaint verified by Detective Kerrigan.

It contained the following charge against petitioner:

"COMMIT BURGLARY IN THE FIRST DEGREE, TO WIT: Entered the residence of another, one Viola Sanders W/F 76 of 516 Alice Street, Richardson Park, Wilmington, Delaware at approximately 3:00 AM and attacked victim, committing assault and battery and attempting to rape her in her residence."

So far as appears from the record, prior to the issuance of the arrest warrant no other statement or evidence implicating petitioner was before Magistrate Levenberg.

Under similar circumstances a warrant comparable in content to Mealey's was held insufficient to support an arrest and the constitutional use of evidence seized as an incident to it. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). At pages 564–565, 91 S.Ct. at page 1035 that Court said:

"The decisions of this Court concerning Fourth Amendment probable-cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. . . . [The] complaint [in this case] consists of nothing more than the complainant's conclusion that the individuals named therein perpetrated the offense described in the complaint. The actual basis for Sheriff Ogburn's conclusion was an informer's tip, but that fact, as well as every other operative fact, is omitted from the complaint. Under the cases just cited, that document alone could not support the independent judgment of a disinterested magistrate."

2. Mealey had admitted to the police that this lighter was like eight lighters which he had stolen from Jack's Delicatessen at some time prior to 3:00 a. m. on September 17th. Four of the same kind of lighters were found in the victim's bedroom at about 7:30 a. m. by Officers Hedrick and Orr during the investigation of the scene.

See also Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

The Delaware Supreme Court upheld Mealey's arrest under the warrant and said "[t]he warrants were sworn out by the investigating officers who had in their possession sufficient circumstantial evidence to incriminate Mealey." Like reasoning was rejected in Whiteley v. Warden, *supra,* where the Court said at 401 U.S. at 565 n. 8, 91 S.Ct. at 1035 :

> "Under the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate. See Aguilar v. Texas, 378 U.S. 108, 109 n. 1, [, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723]."

To the same effect is United States ex rel. Gockley v. Myers, 450 F.2d 232, 234 (3d Cir. 1971).

The arrest was therefore invalid to the extent that it purported to rest upon the warrant.

The State argues, however, that the arresting officers had reasonable ground to believe that Mealey had committed a felony, and that therefore the arrest was valid under 11 Del.C. § 1906(b)(1). It provides :

> "An arrest by a peace officer without a warrant for a felony, whether committed within or without the State is lawful whenever—
>
> (1) he has reasonable ground to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed. . . ."

■ In State v. Moore, 187 A.2d 807, 819 (Del.Super.1963) it was held that no reason existed why "reasonable ground" as used in 11 Del.C. § 1902(a) should not be likened to "probable cause" as used in the fourteenth amendment. Similarly there is no reason why "reasonable ground" as used in 11 Del.C. § 1906(b) should mean anything more,

and the two expressions are consequently equated.

■ In Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925) the Court stated that probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. This standard was more recently reiterated in Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Probable cause is something more than mere suspicion, but less than that evidence necessary to convict. United States v. Margeson, 259 F.Supp. 256, 263 (E.D. Pa.1966). The Court in Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 172, 4 L.Ed.2d 134 (1959) said: "an arrest is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen."

■ By the test of these cases and on the basis of the trial evidence, Officers Astfalk and Hedrick, who made the arrest, had a reasonable ground to believe that Mealey had committed the rape. They had each been at the scene initially and investigated the crime. There they learned that two copies of a motor vehicle violation warrant bearing Mealey's name were on the floor in the victim's bedroom. Although the victim testified that petitioner had been in her house at some time prior to the attack on September 17th, there was no evidence that any of the investigating team knew this when they discovered the copies of the warrant.

Relying upon Giordenello v. United States, *supra,* 357 U.S. at 487–488, 78 S.Ct. 1245, Mealey argues that it is now too late for the State to rely upon the validity of the arrest under 11 Del.C. § 1906(b)(1), since in the trial court the State did not raise the point but sought to uphold the arrest solely on the basis

of the warrant. In *Giordenello,* the United States Supreme Court held that where the government had relied solely upon the arrest warrant in the two lower federal courts to justify the arrest, it was foreclosed from arguing in the Supreme Court on certiorari that the arrest was valid under Texas law.[3] The Court reached this conclusion because "in the District Court petitioner, being entitled to assume that the warrant constituted the only purported justification for the arrest, had no reason to cross-examine Finley or to adduce evidence of his own to rebut the contentions that the Government makes here for the first time." 357 U.S. at 488, 78 S.Ct. at 1251.

In the instant case, unlike *Giordenello,* the State argued in both the Delaware and United States Supreme Courts that the arrest, even though warrantless, was valid under 11 Del.C. § 1906(b)(1). Nevertheless, it is at least possible (although it seems unlikely)[4] that prejudice might result to Mealey by the injection by the State of a new theory after the conclusion of the trial unless he is given an opportunity to rebut it. At the trial Mealey had every right to assume the State relied solely upon the warrant to support the arrest. What evidence, by cross-examination or otherwise, Mealey might have adduced relevant to the validity of a statutory arrest cannot be imagined. Still, since an evidentiary hearing must take place on the validity of Mealey's waiver of his privilege against self-incrimination and his right to an attorney (see text *infra*) at that hearing the parties will be given the opportunity to introduce such evidence as they desire relevant to the warrantless arrest. In this way any possible prejudice to Mealey will be avoided by the State's failure at the trial to support the arrest under § 1906(b)(1). This procedure will not be inconsistent with the view expressed in *Giordenello, supra,* at 488, 78 S.Ct. 1245, which was not a habeas corpus case, and will comply with 28 U.S.C. § 2243 under which Congress has directed the Court to dispose of a habeas corpus petition "as law and justice require".

### Validity of Waiver of Privilege Against Self-Incrimination and Right to An Attorney

The petition alleges, among other things, that the State did not meet its heavy burden of showing that Mealey intelligently waived his privilege against self-incrimination and the right to counsel, and for this reason the conviction should be vacated.[5] The supplemental answer of the State in effect denies this allegation.

Under 28 U.S.C. § 2254(d) this Court is required to hold an evidentiary hearing on this issue. That statute substantially codifies most of the habeas corpus criteria stated in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).[6] There it was held that where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew. 372 U.S. at 312, 83 S.Ct. 745. It is mandatory that a federal court grant such a hearing when a state court has not reliably found the

3. The government argued that Texas law authorized an arrest without a warrant upon probable cause that the person arrested had committed a felony. 357 U.S. at 487, 78 S.Ct. 1245.

4. When copies of the motor vehicle violation warrant which the police found in the victim's home were offered in evidence, Mealey's attorney stated:
   "The fact that they were found there is accepted and there is no objection to their introduction in evidence."

5. This contention was made unsuccessfully in the trial court. It was also made in the Supreme Court of Delaware, (pp. 25–26 of the appellant's brief) but was never discussed or passed upon by it, and in Mealey's petition for certiorari in the Supreme Court of the United States.

6. Procunier v. Atchley, 400 U.S. 446, 451 n. 6, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971).

relevant facts after a full hearing. 372 U.S. at 312–313, 83 S.Ct. 745. This is the case when evidence, material to the adequate consideration of a constitutional claim, has not been developed at the state court hearing.[7] 372 U.S. at 313, 83 S.Ct. 745. This is the situation in the case at bar.

Shortly after his arrest Mealey was taken to the police station and, unrepresented by an attorney, gave a number of oral incriminating statements. Detective Dale testified to these at the trial. Before Dale testified, voir dire was conducted out of the presence of the jury. Dale, Mealey, and the latter's step-father, Martin, all testified for the limited purpose of inquiring into the "voluntariness" of the statements which Mealey made to the police. Following the voir dire, Mealey moved to suppress any of the statements upon the ground that "he wasn't capable of understanding what was happening there." The State argued that Mealey acted "knowing what he was doing". The Court then ruled:

> "I make an independent ruling as follows: One, that the Miranda rights were properly given; two, I find any statement made was voluntary."

■■ In denying the motion to suppress the Court did not in terms rule that Mealey had knowingly and understandingly waived his *Miranda* rights. The discussion of counsel which preceded the ruling, however, indicates that this was its purport.[8] This was a factual determination. The Court did not discuss federal constitutional principles but it may be properly assumed that it applied correct standards of federal law to the facts.[9] Townsend v. Sain, *supra,* 372 U.S. at 315, 83 S.Ct. 745.

■ At the conclusion of the trial the Court under proper instruction submitted to the jury the question of the validity of Mealey's waiver. This procedure complied with Delaware law, Wilson v. State, 49 Del. (10 Terry) 37, 109 A.2d 381 (1954) and with the federal constitutional requirement laid down in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

■ The question of an effective waiver of federal constitutional rights is governed by federal standards, Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and a State's finding of waiver does not bar an independent determination by a federal court on habeas corpus. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Upon voir dire the following facts, among others, were testified to:

Before Mealey made any statement at the police station, Detective Dale read to him a card which stated each of his constitutional rights.[10] After each was read, Detective Dale asked, "do you understand?". Mealey replied in the affirmative and wrote "yes" on the card. Mealey then signed the card. Dale testified that Mealey said that he did not want to talk to a lawyer.[11]

---

7. *See* 28 U.S.C. § 2254(d)(3).

8. Early in the trial even counsel for Mealey had referred to the issue as one of "voluntariness."

9. In Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966) the Court said:
   "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."

Courts never presume the acquiescence in the loss of fundamental constitutional rights. On the contrary, they indulge every reasonable presumption against their waiver. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

10. Previously, immediately after Sergeant Astfalk arrested Mealey at his mother's house, he had advised Mealey of his "rights" by reading him the "standard card." Mealey made no response.

11. Mealey testified that he did ask for a lawyer.

When interrogated by the police, Mealey was 20 years old. He had only been to the third grade in school. From ages 9 to 12 he had been at the Governor Bacon Health Center. Later he had been at the Stockley Home for retarded children. Mealey said he couldn't read or write and that when he was examined he was "still under alcoholic beverages", that "the drunk ain't wore off yet" and that he "was still pretty high".[12] During his life he had worked with "garbage" for about two weeks on separate occasions.

Mealey made no claim nor does the record show that during the interrogation he was coerced, threatened, tricked, cajoled, harassed, intensively interrogated, or held incommunicado without adequate sleep or food, before he made his statements to the police.

Testimony relevant to the validity of Mealey's waiver was developed as part of the defendant's case *after* the trial court had denied the motion to suppress. Reference is made to the testimony of Dr. Galliani.[13] He was the chief psychologist employed by the Delaware State Hospital. His first contact with Mealey was in 1960 when he was chief psychologist at the Governor Bacon Health Center, a residential treatment center for emotionally disturbed children. Mealey was in the Center from late 1958 or early 1959 until some time in 1963. From 1960 on Dr. Galliani had almost weekly, and sometimes daily and nightly, contact with Mealey.

On October 25, 1969, Dr. Galliani examined Mealey for the purpose, *inter alia,* of ascertaining his intellectual ability. He gave Mealey tests for verbal ability, performance and for his I.Q. His verbal ability score was 69, which is "mean high defective" or three categories below normal. His performance score was 85, or "dull normal", one cate-

gory below normal. The full-scale I.Q. test was 75, which was "borderline defective" or two categories below normal. Mealey was given an additional test, the achievement test, which is designed to establish where an individual is able to function in the areas of reading, spelling and arithmetic. Mealey's result showed he was below the third grade level. His arithmetic was just about first grade level and reading and spelling were about the 2.5 average grade level. As to these results, Dr. Galliani said:

"These are very defective. So Russell [Mealey] wouldn't be able to read something and understand what he was reading or signing or what have you.

Q Can he write? Do you know whether he can write?

A I believe he was able to write his name and some very simple words."

Dr. Galliani had a record of tests performed on Mealey dating back to 1960. He testified that a 1962 report stated that all the psychological test results reflected organic brain involvement and that decreases in the I.Q. reflected a possible progressive nature of such involvement from 1958 to 1962.

Dr. Galliani said that a psychological test cannot tell whether or not there is actual physical damage to the brain. He added, however, that an intact brain would not have produced the same kind of perceptive distortion that Mealey had exhibited. He testified that in 1962 and 1963 Mealey's E.E.G. pattern was definitely abnormal, and that the psychological tests strongly suggested organic abnormality. He said:

"[T]he indications are very strong, that there was something wrong with Russell's [Mealey's] brain."

After Dr. Galliani had testified, the trial judge, perhaps under-

12. Dale said that Mealey gave no indication of being drunk or having been drinking.

13. Mealey's mother, Mrs. Martin, also called on behalf of the defense, testified that at quarter of four in the morning of

his police interrogation, Mealey came home "[v]ery much intoxicated". This was of course relevant to the conflict which existed in the testimony on voir dire relating to Mealey's sobriety at the time when he was questioned by the police.

standably, did not re-evaluate his earlier determination that Mealey's waiver was valid for he was never pressed to do so by motion or otherwise. Indeed, at the close of the case, Mealey made no objection to the introduction by the State of the *Miranda* rights form which Mealey had signed. Section 2254(d) makes it clear that when a factual issue has been determined without an adequate development of relevant facts, the determination must be reviewed by a federal court in the light of all the relevant facts. This includes not only those shown by the trial record but such additional evidence as the parties may desire to introduce.

Townsend v. Sain, *supra,* presents a strikingly parallel situation. At the trial the defense moved to suppress a confession on the ground that it was drug induced. A testimonial hearing was held out of the presence of the jury, following which the motion was summarily denied. The jury was then recalled and the confession introduced in evidence. Later in the trial evidence was developed relevant to the voluntariness of the confession. No ruling on voluntariness was made in the light of this later evidence. Because of its relevancy the United States Supreme Court held that it was mandatory for the District Court in the habeas corpus proceeding to hold an evidentiary hearing on the question. At that hearing, the Court said that each party should be given the opportunity to present such testimonial or documentary evidence, including the State court record, relevant to the voluntariness issue.

The parties in the instant case are requested to meet and suggest to the Court a mutually convenient time in the early future when an evidentiary hearing can be held on the validity of Mealey's waiver and on the validity of Mealey's arrest under 11 Del.C. § 1906(b)(1).

Pending the outcome of the hearing final disposition of the petition will be held in abeyance.