**STATE of Delaware, Plaintiff below, Appellant,**

**v.**

**Lawrence C. COCHRAN, Defendant below, Appellee.**

Supreme Court of Delaware.

Submitted Feb. 14, 1977.

Decided March 8, 1977.

P. Clarkson Collins, Jr., Deputy Atty. Gen., Wilmington, for plaintiff-appellant.

Arlen B. Mekler, Asst. Public Defender, Wilmington, for defendant-appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

DUFFY, Justice:

In this appeal we are asked to determine whether the Superior Court correctly construed and applied the intrastate pursuit section of Delaware's Uniform Law on Fresh Pursuit. 11 *Del.C.* § 1935.

Defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor, in violation of 21 *Del.C.* § 4177. During trial the Court granted defendant's motion to dismiss and, since the ruling raised a "substantial question of law" concerning applicability of the "fresh pursuit" statute, we permitted the State to appeal pursuant to 10 *Del.C.* § 9903; a ruling by this Court cannot "affect the rights of the defendant," and so the opinion is issued only to provide guidance in future cases.[1]  *State v. Gwinn*, Del.Supr., 301 A.2d 291 (1972).

---

**1.** 10 *Del.C.* § 9903 provides:

"The State may apply to the appellate court to permit an appeal to determine a substantial question of law or procedure, and the appellate court may permit the appeal in its absolute discretion. The appellate court shall have the power to adopt rules governing the allowance of the appeal; but, in no event of such appeals shall the decision or result of the appeal affect the rights of the defendant and he shall not be obligated to defend the appeal, but the court may require the Public Defender of this State to defend the appeal and to argue the cause."

## I

Briefly, the facts are these: A police officer of the Town of Elsmere testified that he observed defendant traveling at a "high rate of speed" in the west-bound lane of the Kirkwood Highway, a four-lane thoroughfare, divided by a median strip, running east and west. He estimated the speed at fifty miles per hour; the legal limit was thirty-five miles per hour. At the time of observation the officer was entering the east-bound lane from the apron of a service station abutting the highway. A chase ensued but the officer was unable to stop defendant until he was outside the territorial limits of Elsmere. Defendant was then arrested on the driving under the influence charge.

## II

■ The general rule is that "in the absence of statutory or constitutional authority, police officers cannot act outside the territorial limits of the body from which they derive their authority." *State v. Hodgson*, Del.Super., 7 Storey 383, 200 A.2d 567, 569 (1964). The "fresh pursuit" statute, which codifies and expands the common law doctrine,[2] confers upon peace officers the authority to make extraterritorial arrests under narrowly prescribed circumstances; § 1935 provides:

"Any peace officer of a duly organized county, municipal [sic], town, interstate bridge or park peace unit may carry out fresh pursuit of any person anywhere within this State, regardless of the original territorial jurisdiction of such officer, in order to arrest such person pursued, when there is reasonable grounds to suspect that a felony, misdemeanor, or violation of the Motor Vehicle Code has been committed in this State by such person."

■ The parties agree that the phrase "reasonable grounds to suspect," which appears in the statute, is the legal equivalent of "probable cause," and should be accorded the same meaning. We approve that construction of § 1935. Compare *DeSalvatore v. State*, Del.Supr., 2 Storey 550, 163 A.2d 244 (1960), and *United States ex rel. Mealey v. State of Delaware*, D.Del., 352 F.Supp. 349 (1972).

■ Probable cause is an elusive concept which avoids precise definition. Generally, it lies "somewhere between suspicion and sufficient evidence to convict." *United States v. Thompson*, D.Del., 292 F.Supp. 757, 761 (1968); it "exists when the 'facts and circumstances within . . . [the officers'] knowledge . . . [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *United States v. Thompson, id.*, quoting *Brinegar v. United States*, 338 U.S. 160, 162, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), and *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1924); see the discussion in *Garner v. State*, Del.Supr., 314 A.2d 908, 910 (1973).

■ It is somewhat difficult to identify the precise interpretation given by the Trial Judge to § 1935.[3] It appears, however, that

2. Under the common law, an officer outside of his territorial jurisdiction had the status of private citizen and, as such, could arrest only for offenses "committed in his presence which amounted to a breach of the peace; . . . or which threatened a breach of the peace." *State v. Hodgson, supra.*

3. In a Bench ruling the Court said:
"... I would point out that this statute, as well as all statutes, have to be interpreted within reason. The language in the statute itself talks about having reasonable grounds, and I think in this setting what we're doing is, in effect, expanding the jurisdiction of an arresting officer. It's fairly obvious the reason for it is that if a police officer is caught within his narrow territory and he sees something that amounts to a possible felony, a motor vehicle offense, and so on—you read it—that he's not handcuffed and has to stop right at the border and let some offender flee. But it has to be interpreted reasonably, within reason. Now, here in this particular factual setting we have the possibility of a man speeding within the territorial jurisdiction. The statute would permit the extension of the territory in order, as I see it, to verify or not verify whether there's an offense involved. Now, frankly I don't know how the officer could verify it or not verify this particular factual setting. He admits that he really couldn't say exactly how

he construed the statute to require a showing of more than probable cause to justify pursuit and, if so, that was an incorrect interpretation. In other words, the statute does not require that the officer "develop the degree of proof necessary for a conviction before . . . [he] can act." *United States v. Thompson, supra.*

■ In our view, the fresh pursuit statute should be construed as follows:

(1) Once a peace officer has probable cause to believe that an offense of the type specified has been committed within his territorial jurisdiction[4] he may invoke the statute and engage in fresh pursuit.

(2) To make an arrest outside the officer's territorial jurisdiction the pursuit must be immediate and continuous.

(3) The pursuing officer may arrest for any violation which occurs during the pursuit regardless of the place of the offense.

(4) The validity of the pursuit and any resulting arrest are not dependent upon a subsequent conviction for an offense which occurred within the officer's territorial jurisdiction.

We conclude that the Trial Court erroneously construed § 1935 in that it required the State to meet a standard higher than probable cause for arrest and/or the Court required proof beyond a reasonable doubt of an offense committed within the pursuing officer's territorial jurisdiction.

---

fast the vehicle was going, but by the time he got turned around and got in a position where he could verify, the time is past, the opportunity is past, he's outside the jurisdiction. You can't backtrack. The man may have been doing 30, 35, 40 within Elsmere, at a different speed a quarter of a mile away, and I don't think the statute was intended to cover situations which are that uncertain. In the factual setting and uncertainty of his—of his—I hesitate to use the word suspicion, but you used it, Mr. Balick, and I think that is really what it amounted to. He had a suspicion and did what a good officer would do, but I don't think we have a situation where a car went steaming through Elsmere at a fantastic speed, squealing of brakes or a lot of other things that occur in a speeding situation which add color to the reasonable basis for belief and could be susceptible of verifying. I don't think the statute was intended to cover this very thin possible violation and, therefore, I think when the officer undertook to pursue him outside of the jurisdiction of Elsmere, he was outside of his jurisdiction in the stopping of such, and the subsequent arrest was improper and illegal."

4. Arguably, the statute could be read to allow local peace officers to arrest for offenses committed anywhere within the State. However, it is not necessary to reach this question because the alleged offense occurred within the officer's territorial jurisdiction.