**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE      )
                                   )

       v.                 )       ID No. 1703011026

                                   )

JACQUEZ JENKINS,       )

                                   )

       Defendant.       )

*Upon Defendant's Motion to Suppress*
**GRANTED**

## <u>O R D E R</u>

Defendant Jacquez Jenkins was indicted on charges of Drug Dealing, Possession of a Controlled Substance, and Possession of a Firearm by a Person Prohibited. He filed a motion to suppress all evidence seized from his person and vehicle, which the State opposes. The Court finds as follows:

1. In March 2017, Detective Nicholas Beinke of the New Castle County Police Department received an anonymous tip regarding possible drug activity at 420 Rochelle Avenue, Wilmington, Delaware 19804. Specifically, the anonymous tip indicated that

Anthony Quattrociocchi, a resident at 420 Rochelle Avenue, was involved in drug activity at that address.

2. On March 16, 2017, Detective Beinke conducted surveillance of the Rochelle Avenue residence. Around 4:15 p.m. that afternoon he saw a car pull into the driveway. Quattrociocchi exited the residence and entered the passenger seat of the car, where he remained for approximately 30 seconds before getting out and walking back into the residence.

3. Detective Beinke concluded that this behavior was consistent with a drug transaction, and followed the vehicle after it left the Rochelle Avenue residence. Detective Beinke observed the vehicle fail to signal at least 300 feet in advance of a turn. Because Detective Beinke was working in an undercover capacity, he relayed the information to the assisting mobile enforcement team. Officer Matthew Arnold then initiated a traffic stop of the vehicle on Boxwood Road before Newport Gap Pike.

4. Officer Arnold approached Defendant's driver side window of the car, and a second officer, Officer Feliciano approached the passenger side window. Officer Arnold requested Defendant's driver's license and asked Jenkins where he was coming from.

2

Defendant provided his license and stated that he was coming from a friend's house in the neighborhood behind him. While speaking with Defendant, Officer Arnold saw an orange pill bottle in the center cup holder that appeared to have its label removed, which he believed constituted drug paraphernalia. Based on the information relayed to him by Detective Beinke and on his own observation of the pill bottle, Officer Arnold believed he had probable cause to detain and search Defendant and Defendant's vehicle in a drug investigation.

5. Officer Arnold removed Jenkins from the car, placed him in handcuffs, and searched him. The detective found $80.00, but no contraband, in Defendant's jacket pocket. Officer Arnold asked Defendant if there was anything illegal in the car, and Defendant said that his registered pistol was in the trunk. Officer Arnold also asked Defendant what was in the orange pill bottle. Defendant replied that the pill bottle contained coin change.

6. After Officer Arnold finished searching Defendant, Defendant was taken to a patrol car. Officer Feliciano pulled Officer Arnold aside and said, "Hey, you got a rubber band and a tear-off right on the passenger floorboard." He pointed through the driver

3

side window to show Officer Arnold where the rubber band was. Officer Arnold acknowledged seeing the rubber band.[1]

7. Officer Arnold and other officers then searched Jenkins' vehicle without his consent. They quickly found that the pill bottle in fact contained only change. Still, they extended the search to the trunk where they found 66 bags of heroin, two cell phones, a handgun, and a loaded magazine.

---

[1] The State argues that the rubber band factored into the officer's finding of probable cause. The court finds that Officer Arnold's determination of probable cause was based only on the anonymous tip, the surveillance by officer Beinke, and the pill bottle in the vehicle. The court has reviewed the video footage captured on the officers' body cameras, and the rubber band is not visible on the cameras at the time Jenkins is detained and searched. Officer Arnold does not mention the rubber band as he removes Jenkins from the car or while he is searching him, despite asking about the pill bottle at that time. Officer Arnold does not acknowledge the rubber band's presence until after Defendant has been detained and searched, and after Officer Feliciano told Officer Arnold where the rubber band is on the floorboard. At the evidentiary hearing, in response to the State's question, "Where did you see the rubber band?," Officer Arnold testified, " . . . Officer Feliciano is reaching down right now is where *he saw it* originally." Officer Feliciano was not available to testify at the hearing. Additionally, when asked by the State "What factors went into the fact that you wanted to detain him for a drug investigation?," Officer Arnold said, "Based on what Officer Beinke has described happened at the residence, and as soon as I saw the pill bottle in the cup holder area of the vehicle, I knew that vehicle was going to be searched because of that drug paraphernalia." Only in a follow up question specifically about the rubber band did he agree that the rubber band assisted in his decision. Based on Officer Arnold's testimony and the bodycam videos, this court in its discretion finds that Officer Arnold placed probable cause on his observance of the pill bottle and the information relayed to him by Detective Beinke, including the anonymous tip.

8. Defendant was subsequently charged with Drug Dealing, Possession of a Controlled Substance, and Possession of a Firearm by a Person Prohibited.

9. On August 28, 2017, Defendant filed a motion to suppress, contending that the officers lacked probable cause to arrest Defendant and to search his person and his vehicle. The State filed a response on September 15, 2017, arguing that there was probable cause based on the anonymous tip about drug activity at 420 Rochelle Avenue, Detective Beinke's observation of possible drug transaction, the orange pill bottle, and the black rubber band.

10. The Court held an evidentiary hearing on Defendant's motion to suppress on October 2, 2017. At the hearing, the Court found that the officers had probable cause to conduct a traffic stop based on Defendant's failure to signal 300 feet before a turn.[2] However, the Court reserved decision on the issue of whether there was probable cause to search the vehicle. The Court asked for supplemental briefing from the parties on that issue.

---

[2] *See State v. Ellerbe*, 2014 WL 650481 (Del. Super. Jan. 27, 2014) ("Under the Fourth Amendment, a traffic stop is reasonable if it is supported by reasonable suspicion or probable cause to believe that a traffic violation has occurred.").

11. In order to conduct a warrantless search of an automobile, police officers must have probable cause to believe that it contains contraband or evidence.[3] Probable cause is more than suspicion, but less than the sufficient evidence required to convict.[4] It "exists when the facts and circumstances … within [the officers'] knowledge … [are] sufficient in themselves to warrant a man of reasonable caution in the belief than an offense has been or is being committed."[5] The State's bears the burden of proof.[6]

12. The evidence ostensibly supporting the existence of probable cause consisted of:

- An anonymous tip that Quattrociocchi was dealing drugs at the Rochelle Avenue residence.

- Surveillance that the Defendant pulled in the driveway at Rochelle Avenue, and Quattrociocchi came out of the residence and got into the passenger seat of Defendant's car. The surveilling officer could not see any hand-to-hand exchange when Quattrociocchi was in Defendant's car.

[3]  *See Tatman v. State,* 494 A.2d 1249, 1251 (Del. 1985); *State v. Manley,* 706 A.2d 535, 539 (Del. Super. 1996).
[4]  *See Sprinks,* 1990 WL 17789 at *2.
[5]  *Id.* (citing *State v. Cochran,* 372 A.2d 193, 195 (1977)).
[6]  *Hunter v. State,* 783 A.2d 558, 560 (Del. 2001).

- Quattrociocchi sat in the car for roughly 30 seconds, got out and reentered the residence. There was no further contact between the two.

- Police saw a pill bottle in the cup holder on the console of Defendant's car. Defendant truthfully told police it contained coin change.

In the exercise of its discretion,[7] the court finds this does not amount to probable cause.

13. At the time of the arrest and search, the officers had knowledge of an anonymous tip that Anthony Quattrociocchi was engaged in possible drug activity at a specified address.[8] It is well-settled that an anonymous tip "does not, by itself, provide probable

---

[7] *See Rivera v. State*, 7 A.3d 961, 966 (Del. 2010) (The Delaware Supreme Court "reviews a trial court's denial of a motion to suppress after an evidentiary hearing for abuse of discretion. The trial court's formulation and application of legal concepts are reviewed de novo, but the trial court's factual findings will be upheld so long as they are not clearly erroneous."); *Miller v. State*, 4 A.3d 371, 373 (Del. 2010) (same); *see also, Altizer v. State*, 2017 WL 111729, at *2 (Del. Super. Jan. 11, 2017) (internal citations omitted) (When reviewing a finding of probable cause, the appellate court "must adopt the trial court's factual findings and the trial court's reasonable inferences as long as there is sufficient evidence in the record to support them and the findings are not clearly erroneous. Those factual findings can be based upon physical evidence, documentary evidence, testimonial evidence, or inferences from those sources jointly or severally.").

[8] After the evidentiary hearing, the State moved to supplement the record on the anonymous tip, arguing that the tip was not anonymous. The court denied the motion to supplement the record, finding that the anonymity of the tip was an issue clearly raised in the motion to suppress and at the hearing.

7

cause for law enforcement,"[9] but the court will consider under the totality of the circumstances the details contained in the tip and the degree to which the tip is corroborated by independent police surveillance.[10]  Here, the defendant was not named in the anonymous tip and did not reside at the specified address.  The State argues that the anonymous tip was corroborated by the purported drug transaction in Defendant's vehicle, the orange pill bottle, and the black rubber band, and that these facts, when combined, constituted probable cause.[11]  However, even when combined, the officers' knowledge of these facts did not constitute probable cause.

14.  Although Detective Beinke stated that the behavior he observed at 420 Rochelle Avenue was consistent with a possible drug transaction, he did not actually see the parties exchange drugs or cash.  At most, the officers here had a mere suspicion that Defendant was engaged in a drug transaction at 420 Rochelle Avenue.

---

[9]  *State v. Sisson*, 883 A.2d 868, 879 (Del. Super. 2005).
[10]  *LeGrande v. State*, 947 A.2d 1103, 1108 (Del. 2008).
[11]  For the reasons stated above, the court finds the officer's determination of probable cause was not based on the presence of rubber band.  *See supra*, n.1. Even assuming it was, the rubber band was not sufficient to create probable cause.

Therefore, the uncorroborated anonymous tip will be given little weight.

15. And, the orange pill bottle that the officers used to substantiate their suspicion was not sufficient to support a reasonable conclusion that Defendant had committed a crime. Defendant told the officers that the orange pill contained only change, and the officers confirmed this before they conducted a full search of the vehicle.[12] All that is left then is the motor vehicle offense and a suspicion of drug activity. Thus, the limited information that officers had available at the time that they handcuffed Defendant and

---

[12] The State relies on *Lefebvre v. State*, 19 A.3d 287 (Del. 2011) for its argument that the officers' probable cause was not negated upon learning that the orange pill bottle only contained change. In *Lefebvre*, the officers conducted a traffic stop of defendant's vehicle and observed that the defendant's face was flushed, that her speech was slurred, and that she carried a strong odor of alcohol. In response to the officers' questioning, the defendant admitted that she had a drink about an hour and a half before driving. However, the officers then administered several field sobriety tests, which the defendant passed. As a result, she argued that even though the officers had probable cause to arrest her before the field sobriety tests, her passing of those tests negated the probable cause to arrest. The Supreme Court rejected this argument because the defendant conceded that probable cause existed before any field test was administered. In this case, the State argues that the officers already had probable cause to arrest and search before learning that the orange pill bottle only contained change and, therefore, that their probable cause was not negated upon learning this. However, the State's reliance on *Lefebvre* in this case is misplaced, because Defendant here does not concede that there was probable cause at any point, and the Court concludes that the officers did not have probable cause.

9

searched his vehicle did not constitute probable cause that Defendant had committed a crime.

16. Because the officers lacked probable cause to arrest Defendant and search his person and vehicle, all evidence found as a result of that search must be suppressed. Therefore, the Court finds that Defendant's motion to suppress must be granted.

**WHEREFORE,** Defendant's Motion to Suppress is hereby **GRANTED.**

It is so **ORDERED.**

February 1, 2018

John A. Parkins, Jr.
Superior Court Judge

oc: Prothonotary

cc: Amanda J. DiLiberto, DAG, Department of Justice, Wilmington, Delaware
Joseph W. Benson, Esquire, Joseph W. Benson, P.A., Wilmington, Delaware