IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES, | § § § § | |
| | § | No. 681, 2014 |
| Petitioner Below, Appellant, | § § § | |
| | § | |
| v. | § § | Court Below – Family Court of the State of Delaware in |
| JANET FOWLER, JOHN TOWER, AND UNKNOWN FATHER, | § § § § | and for New Castle County |
| | § § | File No. CN14-04728 Pet. No. 14-24863 |
| Respondents Below, Appellees. | § § | |

Submitted: August 19, 2015
Decided: August 26, 2015

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

Upon appeal from the Family Court. **AFFIRMED**.

Jonathan C. Harting, Esquire, Deputy Attorney General, Wilmington, Delaware, for Petitioner Below, Appellant, Department of Services for Children, Youth and Their Families.

John X. Denney, Jr., Esquire, Mattleman Weinroth & Miller, P.C., Newark, Delaware, for Respondent Below, Appellee, Janet Fowler.

SEITZ, Justice:

## I. INTRODUCTION

The Department of Services for Children, Youth and Their Families (the "Department") appeals from a September 18, 2014 Family Court order finding that the Department failed to establish probable cause at a Preliminary Protective Hearing ("PPH") to retain an infant in the Department's custody.[1] The Department argues on appeal that the Family Court failed to apply the correct probable cause standard when it dismissed the Department's petition. We find no merit to the Department's argument and affirm the judgment of the Family Court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Department filed an emergency *ex parte* petition on September 12, 2014, alleging that A.F., a newborn infant, was dependent, neglected, or abused by Mother, John Tower, and Unknown Father.[2] The Family Court granted the Department's *ex parte* petition, entered an order allowing physical or constructive removal of A.F. from his parents, and awarded temporary custody to the Department until further order of the court. As

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] App. to Opening Br. at 1 (Family Court Docket).

2

required by Family Court Rule 212(a), the Family Court scheduled a PPH for September 17, 2014.[3]

The Preliminary Protective Hearing

At the PPH, Jennifer Colon, an investigative worker for the Department, testified that the Department received a hotline report on August 1, 2014, claiming Mother had given birth into a toilet and had appeared to the hotline reporter to be high on drugs, with glassy eyes and slurred speech.[4] Colon also testified that she contacted Mother at St. Francis Hospital, where Mother and child had been taken following the birth. Colon observed Mother with slurred speech and incapable of holding a conversation.[5] A.F. was born with methadone and benzodiazepines in his system and remained in the hospital at the time of the PPH for opiate dependence treatment.[6]

---

[3] Family Court Rule of Civil Procedure 212(a) provides: "if an *ex parte* [preliminary protective] order is granted, a preliminary protective hearing shall be scheduled before a judge within 10 days of the entry of the *ex parte* order . . . ." "Upon a finding [at the preliminary protective hearing] that probable cause exists to believe that a child continues to be in actual physical, mental or emotional danger or there is substantial imminent risk thereof or that a child has been abused or neglected, or continues to be dependent, the Court shall continue the custody order in effect . . . pending an adjudicatory hearing in accordance with 10 Del. C. § 1009." The adjudicatory hearing "shall be scheduled within 30 days of the entry of the preliminary protective order." Fam. Ct. R. Civ. P. 213(a). If at the preliminary protective hearing, the Family Court does not find probable cause, "the petition shall be dismissed and the child returned to the custody or guardianship of the parent[] . . . ." Fam. Ct. R. Civ. P. 212(b).

[4] App. to Opening Br. at 11-12 (PPH Test. of Colon, Sept. 17, 2014).

[5] *Id.* at 12.

[6] *Id.* at 12-13.

3

Colon testified she visited Mother at her home on August 6, 2014 for an interview. Colon completed a full interview with Mother, though Colon observed Mother's speech to be slurred and found that Mother would lose concentration when Colon asked questions. Mother said that she had given birth to A.F. in the toilet because, when her water broke, she thought it was urine and she needed to go to the bathroom. She told Colon she did not know what to do when the baby and placenta were in the toilet and her legs would not move. Mother claimed it was Tower who took her off the toilet and removed the baby from the toilet. Colon also testified that, according to the hotline report, it was the police officer responding to the scene who removed the baby from the toilet, but that she had been unable to confirm the report.[7]

Colon was also concerned about reports from the social worker and nurses at St. Francis Hospital regarding Mother's interactions with the baby. Mother had gone to the hospital every day to visit A.F. until the Department decided to take custody. During those visits, nurses observed Mother nodding off at times. She would ask the same question of them several times in the same visitation session.[8]

---

[7] *Id.* at 13-14, 16-17.
[8] *Id.* at 14.

Colon testified that Mother is participating in a methadone program at Brandywine Counseling to treat addiction to Percocet, and acknowledged Mother had told Colon that Mother's doctor had advised her not to discontinue the methadone while she was pregnant.[9] She also testified that Mother is living with the alleged father, Tower, and that the home is appropriate. The home was stocked with food, had the necessary baby items when she visited, and had working utilities. Colon testified that the Department had concerns about Tower because he admitted at one time to planting heroin and Percocet on Mother to help her get into a rehabilitation program.[10]

Tower testified at the PPH that he was the one who removed the baby from the toilet after birth. He left to go to the bank and had called to check on Mother while he was out. When she did not answer his call, he rushed home. He testified that when he returned home, Mother called out to him, saying she had delivered the baby in the toilet and he immediately called 911.[11] Tower believed Mother did not realize she was in labor because the methadone she was taking masked the pain. He testified that Mother only takes the methadone as prescribed by Brandywine Counseling, and other

---

[9] *Id.* at 17, 23.
[10] *Id.* at 17-18.
[11] App. to Opening Br. at 37-38 (PPH Test. of Tower, Sept. 17, 2014).

5

drugs as prescribed by her physicians.[12] Tower claimed paternity of A.F. At the time of the PPH, paternity testing had not yet been conducted. Tower testified he was able to, and wanted to take care of A.F.[13]

The Court Appointed Special Advocate ("CASA") and her counsel also appeared at the PPH. The CASA opposed the Department's request to continue custody with the Department.

The Family Court Decision

After hearing all the evidence, the Family Court concluded in a September 18, 2014 order that the Department did not establish probable cause to believe that A.F. was dependent, neglected, or abused in the care of Mother and Tower. According to the Family Court, the Department failed to establish that any of the drugs Mother was taking were taken without a doctor's knowledge of her condition or in violation of her physicians' instructions. The court also credited Tower's account of the circumstances of A.F.'s birth over the report from the hotline. The court viewed the remainder of the Department's evidence as insufficient to justify removal of the child from the custody of his parents.

The Department filed a motion for reargument. In a November 12, 2014 letter decision and order, the court denied the motion. The court

---

[12] *Id.* at 39-40.
[13] *Id.* at 40-41, 45-46.

rejected the Department's argument that the court "ignored or misapplied" the probable cause requirement. The court believed it had correctly weighed the testimony of the witnesses and other evidence introduced at the evidentiary hearing, and considered the totality of the circumstances in making its probable cause determination. The court acknowledged the low burden of proof under the probable cause standard, but found that "it would be error of the most egregious kind to ignore the testimony of contrary witnesses just because [the Department] believes that dependency exists based on its own investigation." The court also permitted the Department to renew the petition if circumstances changed based on new facts.

Argument On Appeal

The Department raises a single argument on appeal; the Family Court misapplied the probable cause standard at the PPH. It claims that the Department presented sufficient evidence at the PPH to establish probable cause to believe that A.F. was dependent as to Mother.[14] The Department believes that its evidence at the hearing should have been accepted by the Family Court as conclusive. The Family Court erred, according to the Department, when it relied on the evidence presented by Mother, including her explanations for her behavior, and by assessing the credibility of the

---

[14] Opening Br. at 15.

7

testimony of Tower and Colon.[15]  The Department contends that the Family Court cannot compare and contrast the evidence presented by the parties at a PPH, but must confine its analysis to the Department's knowledge and beliefs.  The Family Court must determine based on the evidence presented by the Department whether that knowledge and those beliefs are sufficient in themselves to support a finding that probable cause exists to believe that the child is dependent.[16]

Mother argues in response that it would be improper for the Family Court to focus only on the Department's knowledge and belief.  The Family Court's rules, according to Mother, require the court to determine, not whether the Department had probable cause to believe the child was dependent and neglected when it filed its *ex parte* petition, but whether probable cause exists to believe the child is dependent or neglected at the time of the PPH.  It is a fundamental due process right of a parent, Mother contends, to contest the taking of custody of a child by the Department.  The PPH, in her view, is designed to give the parent an opportunity to contest the Department's allegations in an adversarial hearing.  The Family Court judge must, according to Mother, consider the evidence presented at the PPH as a whole when making the probable cause determination.

---

[15] *Id.* at 17-21; Reply Br. at 6-7.
[16] Opening Br. at 14; Reply Br. at 6-7.

### III.   ANALYSIS

When reviewing a Family Court's order in a dependency, neglect, and abuse proceeding, we review the facts and law, as well as the inferences and deductions made by the trial court.  Issues of law are reviewed *de novo*.  We conduct a limited review of the factual findings to assure that the record supports them and they are not clearly wrong.  We will not disturb inferences and conclusions the record supports and that are not clearly wrong.  If the trial court has correctly applied the law, our review is limited to abuse of discretion.[17]

The Family Court Rules provide that, in a PPH, "the Court shall determine whether the evidence demonstrates that probable cause exists to believe that a child continues to be in actual physical, mental, or emotional danger or there is a substantial imminent risk thereof."  Hearsay evidence is admissible to meet the Department's burden.[18]  If the Family Court finds probable cause to believe the foregoing danger exists or is imminent, or "that a child has been abused or neglected, or continues to be dependent," the

---

[17] *Taylor v. Division of Family Services*, 7 A.3d 485, 2010 WL 4145190, at *2 (Del. Oct. 22, 2010).

[18] Fam. Ct. R. Civ. P. 212(a).

9

Court continues the *ex parte* custody order.[19] A child is considered dependent as to a parent when the parent:

> a. Is responsible for the care, custody, and/or control of the child; and
> b. Does not have the ability and/or financial means to provide for the care of the child; and
>> 1. Fails to provide necessary care with regard to: food, clothing, shelter, education, health care, medical care or other care necessary for the child's emotional, physical or mental health, or safety and general well-being . . . .[20]

A child is considered neglected as to a parent when the parent:

> a. Is responsible for the care, custody, and/or control of the child; and
> b. Has the ability and financial means to provide for the care of the child; and
>> 1. Fails to provide necessary care with regard to: food, clothing, shelter, education, health, medical or other care necessary for the child's emotional, physical, or mental health, or safety and general well-being; or
>> 2. Chronically and severely abuses alcohol or a controlled substance, is not active in treatment for such abuse, and the abuse threatens the child's ability to receive care necessary for that child's safety and general well-being; or
>> 3. Fails to provide necessary supervision appropriate for a child when the child is unable to care for that child's own basic needs or safety, after considering such factors as the child's age, mental ability, physical condition, the length of the caretaker's absence, and the context of the child's environment.[21]

---

[19] Fam. Ct. R. Civ. P. Rule 212(b).
[20] 10 *Del. C.* § 901(8).
[21] 10 *Del. C.* § 901(18).

We disagree with the Department that the Family Court should have accepted the Department's evidence as conclusive at a PPH. The Family Court judge at a PPH is not a rubber stamp for the Department. Unlike the *ex parte* application procedure for a preliminary protective order, where the parents do not participate, the court must convene a PPH within ten days of the preliminary order, and allow the parents and others to be heard on the dependency claim. At the hearing, the parents can respond to the dependency charges and the judge can assess their credibility.[22] Before reaching a probable cause determination, the court must weigh *all* the evidence presented at the hearing, including the hearsay presented by the Department and the parents, consider the totality of the circumstances, and determine whether the State has met its burden to prove probable cause.[23] The court in this case was free to credit Mother's explanations for her behavior, and to determine that Tower's account of the circumstances of A.F.'s birth should be given more weight than the account presented by the Department. We find no error in the Family Court's conduct of the hearing,

---

[22] *Division of Family Services v. L.C.*, 2002 WL 1932501, at *6 (Del. Fam. Ct. Jan. 17, 2002).

[23] "Probable cause is an elusive concept which avoids precise definition. Generally, it lies 'somewhere between suspicion and sufficient evidence to convict.' [I]t exists when the 'facts and circumstances . . . (are) sufficient in themselves to warrant a man of reasonable caution in the belief . . . .'" *Cochran v. State*, 372 A.2d 193, 195 (Del. 1977). *See* also *L.C.*, 2002 W.L. 1932501, at *4 (quoting *Cochran* in describing the probable cause standard in the context of a PPH).

11

weighing of the evidence, and considering all of the evidence in making its probable cause determination.

The Department relies heavily on *State v. Maxwell,*[24] where this Court reversed a Superior Court order suppressing the results of a blood alcohol test based on a lack of probable cause. We reversed because the Superior Court required the State to negate all innocent explanations of the facts observed by the police officer before probable cause could be established, thereby imposing on the State a burden of proof higher than probable cause.

The *Maxwell* case is distinguishable. *Maxwell* involved a retrospective review in a suppression hearing of a probable cause determination made by a police officer before taking a blood sample.[25] Here, the Family Court Rules require a judge to conduct the PPH and hear evidence in an adversarial setting in advance of a probable cause determination. The Family Court determines "*whether the evidence demonstrates that probable cause exists to believe*"[26] that custody should be continued with the Department under the statute and the court's rules. The Family Court Rules do not restrict the Family Court judge to a review of the

---

[24] 624 A.2d 926 (Del. 1993).

[25] 21 *Del. C.* § 2740 of the Delaware Code provides that a blood test to determine the presence of alcohol may be performed when an officer has probable cause to believe that a person was driving, operating or in physical control of a vehicle while under the influence of alcohol.

[26] Fam. Ct. R. Civ. P. 212(b) (emphasis added).

evidence presented by the Department.[27]  As we observed in *Maxwell*, the probable cause determination must not be made based on the facts in isolation, but instead on "the totality of the circumstances."[28]

## IV.   CONCLUSION

We recognize and respect the Department's deep concern for A.F., given the circumstances of his birth, his mother's serious addiction problems, and other issues.   But, we do not agree with its contention that the Family Court cannot consider all the evidence in making the difficult decisions entrusted to it in these cases.   As to this point, it is clear that the Family Court considered the Department's position very seriously, finding the probable cause determination in this case to be "a very, very close call."[29]   The CASA for A.F. was also "very torn" but agreed with Mother that probable cause did not exist.[30]  Whether we would have made different factual findings and reached a different conclusion is not the standard of review in this Court on appeal.  We cannot say that the Family Court erred as a matter of law, abused its discretion, or that the court's factual findings were clearly wrong.

---

[27] We also note that, unlike *Maxwell*, where the factual record at the suppression hearing was undisputed, the parents vigorously contested the Department's version of the facts.
[28] *Maxwell*, 624 A.2d at 928.
[29] App. to Opening Br. at 55 (PPH Transcript).
[30] *Id.* at 50.

NOW, THEREFORE IT IS ORDERED that the judgment of the Family Court is AFFIRMED.