IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARY KENNEDY,[1] | § | |
| | § | No. 45, 2019 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN17-04312 |
| DIVISION OF FAMILY | § | Petition No. 18-37497 |
| SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: August 14, 2019
Decided: October 11, 2019

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

# **O R D E R**

After consideration of the brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the appellee's response, and the Family Court record, it appears to the Court that:

(1)    The respondent-appellant ("Mother") filed this appeal from the Family Court's order dated January 7, 2019, following a preliminary protective hearing, in which the court found probable cause to believe that Mother's then three-year-old son (the "Child") would be dependent, neglected, or abused in her care and ordered

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

that the Child's Father would have custody of the Child until the resolution of a private custody dispute that was pending before another Family Court judge.

(2)     In 2017, Mother filed a petition for custody of the Child.  In October 2018, the Family Court appointed an attorney (the "Child's Attorney") to represent the Child's best interests in that case.  In December 2018, the Child's Attorney filed a petition for an order of protection from abuse ("PFA") on behalf of the Child, alleging that Mother or her boyfriend were abusing the Child.  The Family Court commissioner who presided over the *ex parte* PFA hearing[2] determined that the Child's Attorney did not have standing to file a PFA petition on the Child's behalf. But the commissioner found the allegations in the PFA petition to be very concerning and, on a *sua sponte* basis, granted custody of the Child to the Division of Family Services ("DFS").  On December 26, 2018, DFS filed a petition for emergency custody, which the Family Court granted in an *ex parte* order.

(3)     The Family Court held a preliminary protective hearing on January 2, 2019.[3]  Mother and Father were present and requested the appointment of counsel. The court determined that Mother was indigent and appointed counsel for her. Because Father worked two jobs and was not able to provide the court with information concerning his income from one of them, the court declined to appoint

---

[2] *See* 10 *Del. C.* § 1043 (governing the process for *ex parte* and emergency hearings in PFA cases).
[3] DEL. FAM. CT. CIV. R. 214(a).

counsel for Father at that time, but stated that if the case proceeded to an adjudicatory hearing, Father would have an opportunity to seek appointment of counsel before that hearing.

(4) The evidence presented at the hearing, which included testimony from Mother, Father, and a DFS worker, reflected that, on at least four days over a period of several months, the Child arrived at day care with bruises on his face. Mother, her boyfriend, and the Child provided inconsistent or shifting explanations for the injuries. Moreover, two day care providers and one medical professional had expressed concerns to DFS regarding physical injuries that appeared on Mother's children when they were in her care. Mother had removed the Child from two day care providers within a short period of time; both moves occurred shortly after the provider had contact with DFS. In addition, Mother had a history with DFS dating to 2007, involving all five of her children. Mother's parental rights with respect to two of her children had been terminated, one involuntarily, and two of her other children were in guardianships. Mother also had a history of mental health issues, and she provided inconsistent testimony regarding the status of her treatment.

(5) Father had no history of involvement with DFS. Father resided in a home with his girlfriend and their infant; he also had frequent visitation with his five-year-old son. The DFS worker assigned to the case assessed the home and had no concerns. A hair follicle screening performed on Father in March 2018 indicated

3

that he had consumed substantial amounts of alcohol, but Brandywine Counseling had evaluated him in April 2018 and determined that he did not need substance abuse services. Mother had alleged that Father engaged in abusive behavior toward her and the Child. In support of her allegations, she presented Facebook posts and text messages that purported to have been created by Father, but Father's testimony and the circumstances surrounding the texts and posts suggested that Mother, rather than Father, had created the messages. The evidence presented at the hearing—including Mother's history of making false reports to law enforcement, for which she had previously served a year in prison in one instance—also raised significant questions about Mother's credibility more generally. Father had no criminal convictions, and certain charges brought against him as a result of allegations by Mother had been dismissed by the prosecutor based on Mother's lack of credibility.

(6)    At the conclusion of the preliminary protective hearing, the court determined that there was probable cause to believe that the Child would be dependent, neglected, or abused in Mother's care.[4] The court determined that there was not probable cause to believe that the Child would be dependent, neglected, or abused in Father's care and therefore rescinded custody of the Child from DFS to

---

[4] *See id.* (providing that at a preliminary protective hearing, the Family Court must decide "whether the evidence establishes that probable cause exists to believe" that "[a]s to each parent, the child is dependent, neglected, or abused or there is a substantial imminent risk thereof," and "[i]t is in the best interests of the child to be in the custody" of DFS).

4

Father.  Because that decision ended DFS's involvement in the matter, the court held that any further custody determination would be made in the custody case that was pending before another Family Court judge.

(7)    Mother's appointed counsel filed a notice of appeal from the Family Court's order.  She also filed a motion to withdraw, in which she stated her belief that the appeal is without merit.  This Court denied the motion to withdraw without prejudice and, although this case did not end with a termination of parental rights, directed Mother's counsel to proceed in accordance with Rule 26.1.  Mother's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c), in which she asserts that, based upon a conscientious review of the record and the law, the appeal is without merit.  Counsel informed Mother of the provisions of Rule 26.1 and provided her with a copy of the motion to withdraw and a draft of the Rule 26.1 brief.  Counsel also informed Mother of her right to supplement counsel's presentation.  Mother provided the points that she wanted to present for the Court's consideration, which counsel included in the brief that she filed with the Court.  DFS has responded to the Rule 26.1(c) brief and argues that the Family Court's judgment should be affirmed.

(8)    On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[5]  We will not disturb the

---

[5] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).

5

Family Court's rulings if the court's findings of fact are supported by the record and result from an orderly and logical deductive process.[6] We review legal rulings *de novo*.[7] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[8]

(9)     Within ten days of the entry of an *ex parte* order under 10 *Del. C.* § 2512(a),[9] the Family Court must hold a preliminary protective hearing.[10] At that hearing, the court must determine whether there is probable cause to believe that:

> (1) As to each parent, the child is dependent, neglected, or abused, or there is a substantial imminent risk thereof, and
> (2) It is in the best interests of the child to be in the custody of [DFS].[11]

If the court finds that such probable cause exists, DFS will have custody of the child pending further proceedings.[12] If the court finds that such probable cause has been established "with respect to only one parent, the Court may rescind custody to the

---

[6] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).

[7] *Id.*

[8] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).

[9] Section 2512(a) provides that the Family Court may issue an *ex parte* order awarding emergency custody to DFS if it finds that:
> (1) Continuation in the home is contrary to the welfare of the child; and
> (2) Probable cause exists to believe that:
> > (a) A child continues to be in actual physical, mental or emotional danger or there is a substantial imminent risk thereof or;
> > (b) Immediate or irreparable harm may result to the child if such an order is not issued.

13 *Del. C.* § 2512(a)

[10] DEL. FAM. CT. CIV. R. 214(a).

[11] *Id.* R. 214(b).

[12] *Id.* R. 214(c).

fit parent in a custodial arrangement and in a time and manner as determined by the Court to be in the best interests of the child."[13] Moreover, the "finding of probable cause may be based in whole or in part on hearsay evidence."[14]

(10) The points Mother raises on appeal may be summarized as follows: (i) the witnesses and attorneys were not credible, lied, and presented false and irrelevant information at the hearing, and they attacked Mother's credibility; (ii) the court and the attorneys mishandled the hearing; (iii) the court overlooked certain evidence, including evidence of Father's alcohol use, a video of Father dancing with a gun, and a prior termination of parental rights; (iv) the court should have ignored certain evidence regarding one of Mother's other children and should have considered other evidence regarding that child; (v) the Child's Attorney lacked standing to file the PFA petition; and (vi) the Child's Attorney never tried to work with Mother.

(11) After careful consideration of Mother's arguments and the record on appeal, we conclude that the judgment of the Family Court should be affirmed. We find no error in the Family Court's application of the law to the facts. The matter came before the Family Court in the posture of a preliminary hearing. The court considered the evidence presented at the hearing and found probable cause that the Child would be dependent, neglected, or abused in Mother's care. That was not a

---

[13] *Id.* R. 214(e).
[14] *Id.* R. 214(f).

final adjudication of the Child's dependency; rather, it would have been subjected to further examination and factual development—and a more exacting legal standard[15]—had the Family Court also found probable cause that the Child would be dependent, neglected, or abused in Father's care. But because the court did not make that finding with respect to Father, DFS's petition was dismissed and the matter was closed, with further proceedings to occur in the pending custody matter to determine the custodial arrangement for the parents and the Child going forward.

(12) At a preliminary protective hearing, the court must weigh all the evidence presented, including the hearsay presented by DFS and the parents, consider the totality of the circumstances, and determine whether DFS has met its burden to prove probable cause.[16] When the determination of facts turns on a question of the credibility of the witnesses appearing before the trial court, we will not substitute our opinion for that of the trier of fact.[17] The court in this case was free to credit Father's testimony regarding issues such as the Facebook posts and text messages and the video of Father dancing with a gun, and to give more weight

---

[15] *See Dep't of Servs. for Children, Youth & Their Families v. Fowler*, 122 A.3d 778, 783 n.23 (Del. 2015) (noting that probable cause "is an elusive concept which avoids precise definition," which generally "lies somewhere between suspicion and sufficient evidence to convict," and "exists when the facts and circumstances [are] sufficient in themselves to warrant a man of reasonable caution in the belief" (internal quotations omitted)).

[16] *Id.* at 783.

[17] *Shimel v. Shimel*, 2019 WL 2142066, at *2 (Del. May 14, 2019).

to Father's and others' testimony than to Mother's regarding disputed facts.[18]  The court also did not abuse its discretion by considering Mother's history involving other children.[19]

(13)   We need not decide whether the Child's Attorney had standing to file a PFA petition on the Child's behalf because the Family Court commissioner dismissed the PFA petition.  Mother's argument that the Child's Attorney did not try to work with Mother does not provide a basis for reversal because the attorney was appointed to represent the child's best interests, not to engage in any particular activities that Mother might have wished.[20]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

---

[18] *Fowler*, 122 A.3d at 783.

[19] *See* 10 *Del. C.* § 901(8), (18) (providing that when making a finding of neglect or dependency, "consideration may be given to dependency, neglect, or abuse history of any party").

[20] *See generally* 13 *Del. C.* § 721(c) (providing that, in a custody proceeding, the Family Court "may, in the interest of the child, appoint an attorney to represent the child in the proceedings"); DEL. FAM. CT. CIV. R. 207(a) (providing that in a dependency, neglect, or abuse proceeding, the Family Court "shall appoint an attorney authorized to practice law in this state or a Court Appointed Special Advocate ('CASA') to represent the best interests of the child.").