**Johnny M. LOPEZ, Defendant Below–Appellant,**

v.

**STATE of Delaware, Plaintiff Below–Appellee.**

No. 599,2003.

Supreme Court of Delaware.

Submitted: Aug. 27, 2004.

Decided: Nov. 22, 2004.

Johnny M. Lopez, pro se.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice.

The defendant-appellant, Johnny M. Lopez, was found guilty by a Superior Court

jury of Trafficking in Cocaine, Possession with Intent to Deliver Cocaine, Maintaining a Dwelling for Keeping Controlled Substances, and Possession of Drug Paraphernalia. He was sentenced to a total of 18 years incarceration at Level V, to be followed by probation. This is Lopez' direct appeal.[1]

### Issues on Appeal

Lopez raises six issues for this Court's consideration. First, he asserts that he was convicted illegally, because he was never indicted by the grand jury. Second, he claims that the Superior Court improperly denied his two pretrial suppression motions. Third, he alleges that the Superior Court improperly denied his request to represent himself at trial. Fourth, he contends that there was insufficient evidence presented at trial to convict him of Trafficking in Cocaine. Fifth, he submits that the Superior Court improperly sentenced him immediately following the trial. Sixth, according to Lopez, his trial counsel provided ineffective assistance.

### Facts

The following evidence was presented at trial. At approximately 10:38 p.m. on March 6, 2003, four police officers went to probationer Lopez' residence at 114 DuPont Street, Wilmington, Delaware to conduct a curfew check and execute an administrative search warrant.[2] The officers were Brian Witte and Anthony Easterling from the Wilmington Police Department and William DuPont and Richard Negley from Operation Safe Streets. Witte and DuPont were wearing clothing that identified them as a police officer and a probation officer, respectively. The administrative search warrant had been approved by DuPont's supervisor on the basis of Lopez' recent positive urine test as well as an anonymous tip that Lopez, who was on probation in connection with another drug charge, was involved in drug dealing.

After arriving at Lopez' residence, Witte, DuPont and Negley went to the front door and knocked. Easterling was stationed outside. A woman, later identified as Melody Ross, answered the door and called for Lopez to come downstairs. As Lopez descended the staircase and made eye contact with the officers, he turned and quickly ran back up the steps to his bedroom. Witte ordered Lopez to stop.

After Ross secured a large dog that was loose in the house, the officers followed Lopez up the stairs. Witte observed a white object falling to the ground through a window next to the stairs and then heard the sound of it breaking into pieces. Easterling, who was stationed outside the house, radioed the officers inside that he had seen Lopez throwing an object out a back window. As Witte and Negley kicked in the locked door to Lopez' bedroom, they observed Lopez walking away from an open rear window. Negley ordered Lopez to get down on the floor, but Lopez continued to walk toward Negley. Witte subdued Lopez and placed him under arrest. A pat-down search incident to Lopez' arrest revealed that Lopez had $807.00 cash in his pocket.

Once outside, Witte located pieces of a broken white plate and a clear plastic bag containing a chunky, tan substance on the ground near the house. He also recovered a bag containing a powdery, white substance on an outside windowsill on the

---

1. Following an evidentiary hearing in the Superior Court, Lopez was permitted to proceed pro se in this direct appeal by Order of this Court dated July 6, 2004.

2. The evidence reflects that Lopez rented a room at the 114 DuPont Street address.

ground floor. The material inside the bags later tested positive for cocaine. The forensic chemist from the Office of the Medical Examiner testified at trial that the plastic bag found on the ground outside the house contained 17.25 grams of cocaine. The bag found on the windowsill contained 0.91 grams of cocaine.

Lopez testified in his own behalf at trial. He denied having any cocaine in his possession on the evening of March 6, 2003. He stated that he was upstairs sleeping when the officers entered his bedroom with guns drawn. He denied running back up the stairs after seeing the officers at the front door. He testified that he had only $7.00 in his pocket at the time of the pat down search and that the remaining $800.00 found by the officers was in his closet.

### Probable Cause Established

■ Lopez' first claim is that the Superior Court improperly denied his two suppression motions, arguing that there was no probable cause for the search that led to the seizure of the drug evidence used against him at trial. Following an evidentiary hearing in June 2003, the Superior Court denied Lopez' first motion to suppress, finding that there had been no search with respect to the drugs found outside Lopez' residence, because those drugs had been abandoned and that there was no evidence the officers failed to conduct themselves in accordance with established procedures for supervising probationers. The Superior Court's determination that the drugs were abandoned is supported by the rec-

ord and is the product of a logical deductive process. Therefore, Lopez' initial motion to suppress was properly denied.

After another evidentiary hearing in November 2003, the Superior Court denied Lopez' second motion to suppress. The Superior Court rejected Lopez' argument on both legal and factual grounds. According to Lopez, the officers from the Wilmington Police Department overstepped their authority by arresting him, patting him down and searching him. Lopez asserts there was no probable cause for his arrest and the function of the City of Wilmington police officers was solely to provide security for the probation officers.

■ "The probable cause standard is incapable of precise definition ... because it deals with probabilities and depends on the totality of the circumstances."[3] Nevertheless, the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, that is particularized with respect to the person to be arrested.[4] A determination of probable cause for an arrest is grounded, first, in the events leading up to the arrest and, second, in the decision whether those events amount to probable cause as a matter of law.[5] "The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact ...."[6]

■ Findings of historical fact are subject to the deferential "clearly erroneous" standard of review.[7] This deferential standard applies not only to historical facts that are based upon credibility determinations but also to findings of historical fact

3. *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 800, 157 L.Ed.2d 769 (2003).

4. *Id.*

5. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

6. *Id.* Accord *Purnell v. State*, 832 A.2d 714, 719 (Del.2003).

7. *Ornelas v. United States*, 517 U.S. at 696, 116 S.Ct. 1657.

that are based on physical or documentary evidence or inferences from other facts.[8] "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[9] Once the historical facts are established, the issue is whether an undisputed rule of law is or is not violated.[10] Accordingly, appellate courts review de novo whether there is probable cause for an arrest, as a matter of law.[11]

Applying the deferential clearly erroneous standard of review, we find no abuse of discretion in the Superior Court's finding that the Wilmington police officers conducted themselves in accordance with the established procedures of Operation Safe Streets, which authorized them to provide security for the probation officers. Moreover, the testimony at the suppression hearing reflected that Lopez, as a condition of his probation, had given his consent to the probation officers to enter his residence.[12] The record also reflects that those probation officers followed the proper statutory procedures for obtaining the administrative search warrant.[13]

Applying the deferential clearly erroneous standard of review, the record reflects that the Superior Court, as the trier of fact, was within its discretion to accept the credibility of the law enforcement officers' testimony. They testified that: first, Lopez turned and ran up the stairs when he saw them at the front door; second, that Lopez locked his bedroom door behind him; third, that an object later determined to contain cocaine was dropped from his bedroom window; fourth, that Lopez refused to cooperate with them; and fifth, that $807.00 in cash was found in Lopez' pocket. Conversely, even though Lopez denied that he had illegal drugs in his possession or threw illegal drugs out his window, the Superior Court was within its discretion to reject that testimony.[14]

Del.Code Ann. tit. 11, § 1904(b)(1) authorizes the police to make an arrest without a warrant where "the officer has reasonable ground to believe that the person to be arrested has committed a felony." The record reflects Lopez' highly suspicious behavior when the police came to the front door, his refusal to cooperate with the officers, and what appeared to be illegal drugs found outside the house. Taken together with his positive urine test and the anonymous tip that Lopez was dealing drugs, the record reflects that it was reasonable for the officers to believe that Lopez was dealing illegal drugs. Applying the de novo standard of review, we conclude that, under the totality of circumstances, the established facts constituted probable cause for Lopez' arrest as a matter of law. The Superior Court properly denied Lopez' motion to suppress the evidence that was seized from his person incident to that arrest.

### *Self–Representation Properly Denied*

■ Lopez' second claim is that the Superior Court improperly denied his re-

---

**8.** *See id.* Accord *Anderson v. City of Bessemer,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**9.** *Anderson v. City of Bessemer,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**10.** *Ornelas v. United States,* 517 U.S. at 696–97, 116 S.Ct. 1657 (quoting *Pullman–Standard v. Swint,* 456 U.S. 273, 289, n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)).

**11.** *Id.* at 697, 116 S.Ct. 1657.

**12.** *McAllister v. State,* 807 A.2d 1119, 1123–24 (Del.2002) (citing *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)).

**13.** Del.Code Ann. tit. 11, § 4321(d).

**14.** *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del. 1972).

quest to represent himself at trial. In September 2004, the Superior Court conducted an evidentiary hearing on Lopez' counsel's motion to withdraw. At that time, Lopez became disruptive and refused to sign the waiver of counsel form.

■ While the right to represent oneself in a criminal proceeding is fundamental, the exercise of that right is not unqualified.[15] Before permitting a defendant to proceed pro se, the judge must ensure that the defendant has made a knowing and intelligent waiver of his right to counsel.[16] We have reviewed the transcript of the hearing at which the Superior Court denied Lopez' request to proceed pro se. We find no error or abuse of discretion on the part of the Superior Court in denying Lopez' request to represent himself when he became disruptive and refused to follow the procedures of the Superior Court for waiving the right to counsel.

### Immediate Sentencing Proper

■ Lopez' third claim, which he raises for the first time in this direct appeal, is that the Superior Court erred by sentencing him immediately after the verdict, without conducting a presentence investigation. The trial transcript reflects that, following the verdict, the prosecutor informed the judge that the State intended to request minimum mandatory sentences on the drug convictions no matter what might be revealed in a presentence investigation. The prosecutor then handed the judge a copy of the Superior Court docket showing that Lopez had a prior conviction for possession with intent to deliver cocaine, which mandated a minimum mandatory sentence.[17] Under these circumstances, the record reflects no plain error on the part of the Superior Court in sentencing Lopez immediately without ordering a presentence investigation.[18]

### Sufficient Evidence Presented

■ Lopez' fourth claim, also raised by Lopez for the first time in this direct appeal, is that there was insufficient evidence presented at trial to convict him of Trafficking in Cocaine. In reviewing a challenge to the sufficiency of the evidence, this Court must determine, viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[19] The undisputed testimony from the Medical Examiner was that there were 17.25 grams of cocaine found on the ground outside Lopez' residence and 0.91 grams of cocaine found on his bedroom windowsill. This evidence, along with the other evidence presented at trial, clearly was sufficient to convict Lopez of Trafficking in Cocaine.[20] There was, therefore, no plain error.[21]

15. *Stigars v. State,* 674 A.2d 477, 479–80 (Del. 1996).

16. *Briscoe v. State,* 606 A.2d 103, 107–08 (Del. 1992).

17. Lopez received a minimum mandatory sentence of 3 years for Trafficking in Cocaine and a minimum mandatory sentence of 15 years for his second conviction of Possession with Intent to Deliver Cocaine. Del.Code Ann. tit. 16, §§ 4751 and 4763 (1995).

18. *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986) (Plain error is an error "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the judicial process").

19. *Monroe v. State,* 652 A.2d 560, 563 (Del. 1995).

20. Del.Code Ann. tit. 16, § 4753A(a)(2)(a) (1995).

21. *Wainwright v. State,* 504 A.2d at 1100.

### Grand Jury Indictment

Lopez' fifth claim is that his convictions are illegal, because he was never indicted by the grand jury. The record reflects that Lopez was indicted by the New Castle County grand jury on March 24, 2003. Accordingly, Lopez' claim is contradicted by the undisputed record of his indictment.

### Ineffectiveness Issue Premature

 Lopez' final claim is that his trial counsel provided ineffective assistance. It is well-established law that this Court will not consider a claim of ineffective assistance of counsel for the first time on direct appeal.[22] Because Lopez did not raise an ineffective assistance of counsel claim in the Superior Court, we decline to address it for the first time in this direct appeal.

### Conclusion

This Court has reviewed the record carefully and concluded that Lopez' appeal is wholly without merit and devoid of any arguably appealable issue. The State's motion to affirm is granted. The judgments of the Superior Court are affirmed.

22. *Desmond v. State,* 654 A.2d 821, 829 (Del. 1994).