# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| **WENDY S. ALTIZER,** | ) | |
| | ) | |
| **Defendant-Below,** | ) | |
| **Appellant** | ) | |
| | ) | |
| v. | ) | **ID. No. 1409012918** |
| | ) | |
| **STATE OF DELAWARE,** | ) | **Cr. A. Nos. MN 14-10-4136, etc.** |
| | ) | |
| **Plaintiff-Below,** | ) | |
| **Appellee.** | ) | |

Submitted: October 12, 2016
Decided: January 11, 2017

## ORDER

*Upon Appeal from the Court of Common Pleas of the State of Delaware
in and for New Castle County,*
**AFFIRMED, IN PART; DISMISSED, IN PART.**

This 11th day of January, 2017, upon consideration of the parties' briefs, the parties' oral arguments, the record on appeal, and the record below, it appears to the Court that:

(1)     The Court of Common Pleas denied Appellant Wendy S. Altizer's pretrial motion to suppress evidence derived from an investigation and arrest of her for Driving Under the Influence ("DUI") and other related traffic charges.[1]

---

[1]     Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 38-42.

Following a May 2016 jury trial in the Court of Common Pleas, Altizer was found guilty of DUI and Improper Lane Change.[2] For the DUI conviction (her second), Altizer was sentenced to 18 months imprisonment, suspended after 60 days for a probated term with certain conditions that include payment of a fine and completion of the education and rehabilitation programs required by Delaware's motor vehicle code. For the improper lane change, Altizer received a $25 fine.[3]

(2) Altizer timely appealed her convictions.[4] The sole remaining issue on Altizer's appeal is the Court of Common Pleas' denial of her suppression motion.[5]

---

[2] Del. Com. Pl. Trial Tr. (May 10, 2016) at 162-63.

[3] Sent. Order, *Wendy S. Altizer v. State of Delaware*, ID No. 1409012918 (Del. Com. Pl. May 10, 2016).

[4] Notice of Appeal, *Wendy S. Altizer v. State of Delaware*, ID No. 1409012918 (Del. Super. Ct. filed May 16, 2016). Altizer included in her notice of appeal the convictions for both the DUI and the improper lane change charges. But this Court lacks jurisdiction to consider her appeal from the latter. *See* DEL. CODE. ANN. tit 11, § 5301(c) (2015) (granting right of appeal to Superior Court from "any order, rule, decision, judgment or sentence of the Court [of Common Pleas] in a criminal action . . . as provided in § 28, article IV of the Constitution of the State"); Del. Const. art. IV, § 28 (appeals to Superior Court available where the sentence includes imprisonment exceeding a month or a fine exceeding $100); *See also Reese v. State*, 2014 WL 4059213, at *1 (Del. Aug. 15, 2014) ("In cases of multiple convictions, each sentence must be evaluated individually in order to determine whether it meets the constitutional threshold.").

[5] Appellant's Opening Br. 5-19. At trial and through her briefing on appeal, Altizer claimed also that her privilege against self-incrimination, derived from both the federal and state constitutions, was violated when the trial court admitted evidence of her refusal to submit to an Intoxilyzer test. *See* Del. Com. Pl. Trial Tr. (May 9, 2016) at 48-52 (defense counsel objected to the introduction of Altizer's breath test refusal only as violating *Miranda v. Arizona*, 384 U.S. 436 (1966)); Appellant's Opening Br. 20-28 (arguing that admission of the intoxilyzer refusal violated her privilege against self-incrimination as granted by Article I, Section 7, of the Delaware Constitution).

Altizer, as she should, has now abandoned the self-incrimination claim because it is contrary to well-settled federal and state constitutional law. More than three decades ago, the United States

(3)     This Court takes criminal appeals from the Court of Common Pleas.[6] And such appeals are reviewed on the record, not tried *de novo*.[7] "In fact, this Court functions in the same manner as the Supreme Court, in its position as an intermediate appellate court, when considering an appeal from the Court of Common Pleas."[8]

(4)     Here Altizer argues that the Court of Common Pleas erred when it found probable cause existed for her roadside arrest for DUI. The Court finds that the Court of Common Pleas did not abuse its discretion when it denied Altizer's motion to suppress. And thus, the Court affirms the judgment of the Court of Common Pleas.

---

Supreme Court held that the Fifth Amendment to the United States Constitution does not bar admission of evidence of a driver's refusal to submit to a chemical test. *South Dakota v. Neville*, 459 U.S. 553, 564 (1983) ("We hold, therefore, that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination.") And more than a half-century ago, our supreme court held the same when ruling on a challenge to the admission of an intoxilyzer refusal under Article 1, Section 7, of the Delaware Constitution. *State v. Durrant*, 188 A.2d 526, 514-15 (Del. 1963) (". . . the provisions relating to privilege against self-incrimination under the provisions of Article I, Section 7 of the Delaware Constitution . . . embrace only a prohibition by compulsory oral examination" not "[t]he fact that [a] defendant declined to submit to a sobriety test . . .").

[6]     DEL. CODE. ANN. tit 11, § 5301(c) (2015).

[7]     *Id.*

[8]     *Stevens v. State*, 110 A.3d 1264, 1268 (Del. Super. Ct. 2015) (internal citations and quotations omitted); *see also Baker v. Connell*, 488 A.2d 1303, 1309 (Del. 1985) (Superior Court's function as intermediate appellate court is basically the same as the Supreme Court's).

(5)     This Court reviews the Court of Common Pleas' denial of a motion to suppress after an evidentiary hearing for abuse of discretion.[9]   Whether probable cause exists is a mixed question of fact and law.[10]  Findings of fact are reviewed to determine whether there is sufficient evidence in the record to support those findings.[11]  And this Court "must adopt [the trial court's] factual findings and [the trial court's] reasonable inferences as long as there is sufficient evidence in the record to support them and the findings are not clearly erroneous."[12]   Those "factual findings can be based upon physical evidence, documentary evidence, testimonial evidence, or inferences from those sources jointly or severally."[13] Also, under this deferential clearly erroneous standard of review, "[w]here there are two permissible views of the evidence, the factfinder's choice between them

---

[9]     *Lopez-Vasquez v. State*, 956 A.2d 1280, 1284 (Del. 2008); *Hunter v. State*, 2008 WL 625566, at *2 (Del. Mar. 10, 2008); *State v. Crespo*, 2009 WL 1037732, at * 4 (Del. Super. Ct. Apr. 17, 2009).

[10]     *Brown v. State*, 897 A.2d 748, 750 (Del. 2006).

[11]     *Id.*

[12]     *State v. Abel*, 68 A.3d 1228, 1232 (Del. 2012); *Cooke v. State*, 977 A.2d 803, 854 (Del. 2009).

[13]     *Abel*, 68 A.3d at 1232 (internal quotations and citations omitted); *Lopez v. State*, 861 A.2d 1245, 1248-49 (Del. 2004) ("This deferential standard applies not only to historical facts that are based upon credibility determinations but also to findings of historical fact that are based on physical or documentary evidence or inferences from other facts.").

cannot be clearly erroneous."[14] Once the facts and reasonable inferences therefrom are properly established, "the issue is whether an undisputed rule of law is or is not violated."[15] The trial court's formulation and application of legal concepts are reviewed *de novo*.[16] And so, giving the proper deference to the Court of Common Pleas' factual findings, this Court reviews *de novo* whether there was probable cause for an arrest, as a matter of law.[17]

(6) The State's evidence at the proceedings below fairly established the following version of events. In the early morning hours of September 18, 2014, Altizer was on Green Street in Middletown when she slammed her Jeep Grand Cherokee into a vehicle legally parked on the side of that street. The collision was of such force that it drove that other vehicle from its position parallel to a position perpendicular to the curb. Altizer continued down the road until her vehicle became disabled at the intersection of Green and Catherine Streets.[18] Sergeant

---

[14] *Lopez*, 861 A.2d at 1249 (quoting *Anderson v. City of Bessner*, 470 U.S. 564, 574 (1985)).

[15] *Id.* (citing *Ornelas v. United States*, 527 U.S. 690, 696-97 (1996)).

[16] *Lopez-Vasquez v. State*, 956 A.2d 1280, 1284-85 (Del. 2008); *Donald v. State*, 903 A.2d 315, 318 (Del. 2006).

[17] *Lopez*, 861 A.2d at 1249 (citing *Ornelas*, 527 U.S. at 697).

[18] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 9, 29-30; *id.* at 9-11 (entry of police body camera recording as State's Suppression Exhibit 7 [referenced hereinafter as "Supp. Hrg. Ex. 7 at ___"]); Supp. Hrg. Ex. 7 at 05:55-50, 08:19-13:00, 17:09-19:55; Del. Com. Pl. Trial Tr. (May 9, 2016) at 35-46.

Raymond Howard of the Middletown Police Department, a well-experienced police officer trained specifically in DUI investigation, arrived at the scene.[19] Sgt. Howard wore a body camera that recorded his roadside interaction with Altizer.[20]

(7)  Altizer was walking away from her disabled vehicle when Sgt. Howard first saw her; he had to call her back.[21] She returned, they began talking, and the sergeant detected a moderate odor of alcohol coming from Altizer's breath.[22] Sgt. Howard noticed also that Altizer's eyes were bloodshot.[23] When asked for her license, registration and insurance information, Altizer gave the sergeant the first two but needed to be reminded of and had difficulty producing the third – at one point, confusing a registration document for it.[24] During this initial interaction, Sgt. Howard had to ask Altizer three separate times how the accident happened. Altizer seemed either to avoid the question or to be too

---

[19]  Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 6-9; Del. Com. Pl. Trial Tr. (May 9, 2016) at 31-32.

[20]  Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 9-11; Del. Com. Pl. Trial Tr. (May 9, 2016) at 32 - 34.

[21]  Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 11-12; Supp. Hrg. Ex. 7 at 00:57.

[22]  Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 12; Del. Com. Pl. Trial Tr. (May 9, 2016) at 37.

[23]  Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 12; Del. Com. Pl. Trial Tr. (May 9, 2016) at 37.

[24]  Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 12; Supp. Hrg. Ex. 7 at 01:03, 01:48-02:48.

oblivious to answer.[25] When she did, Altizer told the sergeant that she had been in an argument at a friend's place, was upset, and that she was now coming from Lowe's.[26] Sgt. Howard told Altizer that it was about 1:30 a.m. and Lowe's had been closed for hours. Altizer said then that she was coming from Wawa.[27] Sgt. Howard recounted, "she was confused about where she was and what she was doing and performing that night."[28]

(8) Altizer was twice asked how much she had to drink. Twice she denied drinking at all.[29] When confronted with the fact that Sgt. Howard could smell alcohol on her, Altizer then said "maybe I had a few beers."[30] At this point, Sgt. Howard attempted to begin field sobriety testing with the horizontal gaze nystagmus (HGN) test. Altizer did not perform well on that test.[31] She suddenly became emotional, claimed she was unable to perform the HGN test because she

---

[25] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 26; Supp. Hrg. Ex. 7 at 01:04, 01:35, 02:52-54.

[26] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 15; Supp. Hrg. Ex. 7 at 02:54-03:44.

[27] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 15; Supp. Hrg. Ex. 7 at 03:34-03:49.

[28] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 15.

[29] Supp. Hrg. Ex. 7 at 03:52-04:12.

[30] Id. at 03:52-04:12.

[31] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 15-16; Supp. Hrg. Ex. 7 at 04:21-05:20.

was upset, and refused to perform any more field sobriety testing.[32] Sgt. Howard then placed her under arrest for suspicion of driving under the influence.[33]

(9) At the police station, Altizer refused to take an Intoxilyzer breath test. So Sgt. Howard sought a seizure warrant to collect a sample of her blood. After the warrant was obtained, Altizer's blood was drawn.[34] The result of her blood test revealed Altizer had a blood alcohol content of .15 grams of alcohol per 100 milliliters of blood – almost twice the legal limit.[35]

(10) The legal principles involved here are well-established. Probable cause exists when a police officer possesses information which would warrant a reasonable man into believing that a crime has been committed.[36] The wrongdoing at question here is the offense of driving under the influence as defined by Delaware's motor vehicle code. "While under the influence" is defined in Title 21, section 4177(c)(5) to mean that "the person is, because of alcohol or drugs or a combination of both, less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or

---

[32] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 15-17; Supp. Hrg. Ex. 7 at 04:21-05:25.

[33] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 17; Supp. Hrg. Ex. 7 at 05:25-05:45.

[34] Del. Com. Pl. Trial Tr. (May 9, 2016) at 52-53.

[35] Del. Com. Pl. Trial Tr. (May 10, 2016) at 47.

[36] *Garner v. State*, 314 A.2d 908, 910 (Del. 1973). *See also Carter v. State*, 814 A.2d 443, 445 (Del. 2002) ("For an arresting officer to have probable cause, the officer's knowledge must be sufficient for a prudent person to believe that an individual had committed or was committing an offense.").

due care in the driving of a vehicle."[37] The evidence need not establish that the person is "drunk" or "intoxicated."[38]

(11) Probable cause is measured, not by precise standards, but by the totality of the circumstances through a case-by-case review of "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"[39] In turn, our courts have long-recognized that "[p]robable cause is an elusive concept which avoids precise definition, lying somewhere between suspicion and sufficient evidence to convict."[40] "Probable cause does not require the police to uncover information sufficient to prove a suspect's guilt beyond a reasonable doubt or even to prove that guilt is more likely than not."[41] Rather, probable cause merely requires the State to present facts which are sufficient to show that "there is a fair probability that the defendant has committed a crime."[42] "That hypothetically innocent explanations may exist for facts learned

---

[37] DEL. CODE ANN. tit. 21, § 4177(c)(5)(2014); *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011), reargument denied (May 26, 2011) (citing *Bease v. State*, 884 A.2d 495,498 (Del.2005)).

[38] *Stevens v. State*, 110 A.3d 1264, 1271 (Del. Super. Ct. 2015).

[39] *Schramm v. State*, 366 A.2d 1185, 1192 (Del. 1976) (quoting *United States v. Harris*, 403 U.S. 573, 582-83 (1971)).

[40] *Stewart v. State*, 2008 WL 482310, at *2 (Del. Feb. 22, 2008); *State v. Cochran*, 372 A.2d 193, 195 (Del. 1977).

[41] *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993).

[42] *Id.*

during an investigation does not preclude a finding of probable cause."[43] When determining whether a particular arrest was supported by probable cause, the facts must be viewed under the totality of the circumstances then facing the investigating officer.[44] Under the totality of the circumstances standard, facts are not viewed in isolation to assess the establishment of probable cause.[45] And the totality of the circumstances standard takes into account a police officer's training, experience, observations, investigation, and any rational inferences drawn therefrom.[46] At bottom, "[w]hat is required is that the arresting police officer possess a 'quantum of trustworthy factual information' sufficient to warrant a man of reasonable caution in believing a DUI offense has been committed."[47]

(12) As a general rule, the burden of proof is on the defendant who seeks to suppress evidence.[48] But once the defendant has established a basis for her motion, *i.e.,* the seizure was conducted without a warrant, the burden shifts to the

---

[43]      *Lefebvre,* 19 A.3d 287, 293 (Del. 2011).

[44]      *Maxwell,* 624 A.2d at 930.

[45]      *Id.* at 931.

[46]      *Id.*

[47]      *Lefebvre,* 19 A.3d at 293 (quoting *Maxwell,* 624 A.2d at 931).

[48]      *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995); *State v. Babb,* 2012 WL 2152080, at *2 (Del. Super. Ct. June 13, 2012).

State to show that the warrantless seizure was reasonable.[49] And the burden the State must carry on such a motion to suppress is proof by a preponderance of the evidence.[50]

(13) There is no doubt that the Court of Common Pleas understood, properly formulated, and properly applied each of the legal principles explained above when it considered and denied Altizer's motion to suppress.[51]

(14) Applying the deferential clearly erroneous standard of review, this Court finds no err in the Court of Common Pleas' factual findings that: Altizer inexplicably struck a parked vehicle; smelled of alcohol; had bloodshot eyes; was unresponsive to certain questions about how the accident occurred; did not follow directions properly during the HGN test; and initially denied any drinking until confronted.[52] There is sufficient evidence in the record to support those findings.[53]

(15) Applying the deferential clearly erroneous standard of review, the record reflects that the Court of Common Pleas, as the trier of fact, was within its

---

[49] *Johnson,* 63 F.3d at 245; *Hunter v. State,* 783 A.2d 558, 560 (Del. 2001) (Regarding "which party bears the burden of proof on a motion to suppress evidence seized during a *warrantless* search, the rule in Delaware should now be clear. The State bears the burden of proof.").

[50] *State v. Iverson,* 2011 WL 1205242, at *3 (Del. Super. Ct. Mar. 31, 2011).

[51] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 38-42 (Court of Common Pleas' suppression ruling).

[52] Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 40-42.

[53] *See Brown v. State,* 897 A.2d 748, 750 (Del. 2006).

-11-

discretion to further find as fact or draw as reasonable inferences: that Altizer was "not very responsive" at certain points of her interaction with Sgt. Howard; that she "was foggy and was confused" at other points; that she was "very mixed up about where she was coming from"; that her emotional upset was in response to being asked to perform field sobriety tests; and that her refusal to take those tests was "a consciousness of guilt indicator."[54] Again, there is sufficient evidence in the record to support those findings. And, while Altizer strongly urges other views of the evidence, the Court of Common Pleas' choice of permissible alternatives cannot be clearly erroneous.[55]

(16) It then becomes this Court's duty is to determine whether these facts along with the reasonable inferences flowing from those facts were sufficient to conclude that there was "a fair probability"[56] that Altizer was driving when "because of alcohol or drugs or a combination of both, [she was] less able than [she] would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of [her] vehicle."[57]

---

[54]    Del. Com. Pl. Supp. Hrg. Tr. (Nov. 3, 2015) at 40-42.

[55]    *Lopez v. State*, 861 A.2d 1245, 1249 (Del. 2004).

[56]    *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993); *State v. Iyer*, 2011 WL 976480, at *1 (Del. Super. Ct. Feb. 23, 2011) ("The standard for probable cause continues to require only a fair probability, under the totality of the circumstances, that a crime has been committed.").

[57]    DEL. CODE ANN. tit. 21, § 4177(c)(5) (2014); *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011).

Applying the *de novo* standard of review, this Court concludes that, under the totality of circumstances, the established facts constituted probable cause for Altizer's DUI arrest as a matter of law.[58] The Court of Common Pleas Court properly denied her motion to suppress.

(17) The Court of Common Pleas' judgment of conviction on the DUI charge is, therefore, **AFFIRMED.** Because the sentence for the lane change violation does not meet the jurisdiction requirement, the appeal as to that conviction must be **DISMISSED** without review.[59]

---

[58] *See, e.g. Lefebvre,* 19 A.3d at 292-93 (probable cause to arrest driver for DUI without any field sobriety tests, where driver committed a traffic offense, exhibited a strong odor of alcohol, had a flushed face, admitted drinking, and was somewhat flustered and argumentative with the officer); *Bease v. State,* 884 A.2d 495,498 (Del. 2005) (evidence of a traffic violation, odor of alcohol, rapid speech, admission to drinking, bloodshot and glassy eyes and a failed alphabet test constituted probable to arrest the driver for DUI); *Maxwell,* 624 A.2d at 929-31 (Probable cause to believe defendant violated DUI statute when there was a one-car accident, odor of alcohol at scene of accident, several containers of beer in vehicle and no field tests); *Iyer,* 2011 WL 976480, at **11-14 (in the absence of admissible field test results, eyes that were "maybe a little bit bloodshot", odor of alcohol, admission to consuming alcohol prior to the accident, and involvement in a single-vehicle accident were facts sufficient to establish probable cause to take defendant into custody for the completion of the Intoxilyzer test). *See also Church v. State,* 11 A.3d 226, at n. 11 (Del. 2010) ("[A] defendant's refusal to submit to testing can be used for any relevant purpose, including showing consciousness of guilt" in DUI case); *State v. Trager,* 2006 WL 2194764, at *6 (Del. Super. Ct. July 28, 2006) ("A police officer may consider irrational, erratic, or belligerent behavior in making his or her probable cause determination.").

[59] *See Reese v. State,* 2014 WL 4059213, at *1 (Del. Aug. 15, 2014) (Supreme Court must dismiss appeal of any individual sentence that fails to meet the constitutional threshold for appealable sentences); *Castura v. State,* 2009 WL 2365558, at *2 (Del. July 16, 2009) (when appeal is to the Supreme Court, "each sentence [imposed] must be evaluated individually in order to determine whether it meets the constitutional threshold" and for those sentences that do not "meet the jurisdictional requirement . . . appeal as to those convictions must be dismissed without review"); *Stevens v. State,* 110 A.3d 1264, 1272 (Del. Super. Ct. 2015) (citing *Johnson*

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

Original to Prothonotary

cc:  Ryan Bounds, Deputy Attorney General
     Tianna Bethune, Deputy Attorney General
     Joseph A. Hurley, Esquire

---

*v. State*, 2008 WL 2721698, at *1 (Del. July 14, 2008)) (same for appeals to this Court from the Court of Common Pleas).