# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
)
v. )
) I.D. No. 2505004443
)
RALPH TUCKER )
)
)

Submitted: January 7, 2026
Decided: January 21, 2026

*Upon Defendant's Motion to Suppress Evidence*
**GRANTED**

## MEMORANDUM OPINION AND ORDER

Christina M. Davis, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, 820 North French Street, 7th Floor, Wilmington, DE 19801; Attorney for State of Delaware.

Eugene J. Maurer, Jr., Esquire, 1201-A King Street, Wilmington, DE 19899; Attorney for Defendant Ralph Tucker.

**WHARTON, J.**

## I. INTRODUCTION

Defendant Ralph Tucker ("Tucker") is charged by the grand jury with two counts of Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of Ammunition by a Person Prohibited ("PABPP"), Non-compliance with Bond Conditions, and Resisting Arrest. The PFBPP and PABPP charges resulted after police executed two search warrants – one at an address in Claymont, Delaware (the residence warrant) seeking evidence related to an investigation of Meccour Redden ("Redden") and the second for Tucker's DNA (the DNA warrant.) Tucker challenges the probable cause supporting both warrants.[1] He alleges that the residence warrant does not establish a nexus between the residence and the items sought.[2] He argues the DNA warrant lacked probable cause to believe his DNA would be found on the seized firearms and that it failed to establish probable cause to believe that evidence of a crime would be found through the seizure of his DNA.[3] Looking to the four corners of each warrant and giving due deference to the probable cause determinations of the authorizing magistrates, the Court finds that the residence warrant inferentially establishes a nexus between the residence and the items sought. But, the DNA warrant fails to establish probable cause that Tucker's

---

[1] Mot. to Suppress, D.I. 18.
[2] *Id.*
[3] *Id.*

DNA would be found on the firearms. The Motion to Suppress Evidence is **GRANTED** on that basis.

## II. FACTS AND PROCEDURAL HISTORY

The basic facts are not in dispute and largely are taken from the probable cause affidavits of the two search warrants at issue. In March 2025, Senior Corporal Keith Johnson ("S.Cpl. Johnson") of the Wilmington Police Department began an investigation into the sale of fictitious vehicle registrations and other related documents on Instagram.[4] That investigation identified Redden as a suspect with a current address of 2 Glenrock Dr. in Claymont, Delaware.[5] On May 9th, S.Cpl. Johnson and others executed a search warrant he had obtained the day before for 2 Glenrock Drive. The search warrant sought documents and items related to the sale of fictitious registration cards on Instagram.[6] During the execution of the warrant, the police seized two firearms from an upstairs bedroom and ammunition from a separate upstairs bedroom.[7] Tucker was also upstairs in the residence, but apparently in a location separate from the firearms and ammunition.[8] Subsequently

---

[4] *Id.* at Ex. A (Residence Warrant at ¶ 2) (Both warrants are attached as exhibits to the both the Motion to Suppress Evidence and the State's Response. In each submission, the Residence Warrant is Exhibit A and the DNA Warrant is Exhibit B. Subsequent references will refer to the warrants themselves.).
[5] Residence Warrant at ¶ 3.
[6] *Id.*
[7] *Id.* at ¶ 3.
[8] *Id.*

on May 9th, S.Cpl. Johnson obtained a warrant for the body of Tucker to take saliva via a buccal swab for DNA testing.[9]  Tucker's DNA was identified on the grip of one of the firearms.[10]

Tucker filed his suppression motion on November 14, 2025.[11]  The State responded on December 16th.[12]  The Court heard argument on January 7, 2026.

### III. THE PARTIES' CONTENTIONS

#### A.    Tucker.

Tucker claims residency at 2 Glenrock Drive, and, therefore, standing to bring this motion, an assertion the State does not challenge.  Citing *Dorsey v. State's* requirement that there be a "logical nexus between the items sought and the place to be searched,"[13] Tucker argues that nothing in the affidavit of probable cause links Redden's criminal activity to 2 Glenrock Drive.[14]  Further, S.Cpl. Johnson "offered no statement that any of the evidence discovered on [Redden's Instagram account] provided a logical inference that it was objectively reasonable for the police to expect to find the items sought at 2 Glenrock Drive."[15]  As a result, the seizure of the

---

[9] DNA Warrant.
[10] Mot. to Suppress. at Ex. C.
[11] *Id.*
[12] State's Resp., D.I. 21.
[13] Mot. to Suppress. at ⸿ 5 (quoting *Dorsey*, 761 A.2d 811, 811 (Del. 1989)), D.I. 18.
[14] *Id.* at ⸿ 8.
[15] *Id.*

weapons and ammunition violated Tucker's rights under Article I, Section 6 of the Delaware Constitution and 11 *Del. C.* § 2306, and, therefore those items must be suppressed.[16]

Tucker also finds fault with the probable cause supporting the DNA warrant. He asserts that the affidavit in support of the warrant provided "no information within the four corners of the warrant for the magistrate to determine whether the Defendant had any connection to the residence other than his presence at the time of the execution of the residential search and a vague citation of 'documents' in the rear bedroom."[17] Additionally the affidavit failed to establish any nexus between Tucker and the vacant bedroom where the firearms were found.[18]  Finally, Tucker argues that the affidavit failed to establish a fair probability that the seizure of his DNA could be linked to any crime.[19]  S.Cpl. Johnson asserted only that individuals "may possibly" transfer skin cells to objects they handle and those objects "may possibly" retain DNA samples from subjects who touch the objects.[20]  According to Tucker those "mere inference[s]" failed to establish a reasonable probability that his DNA would be found on the objects seized.[21]

---

[16] *Id.* at ¶ 9.
[17] *Id.* at ¶ 11.
[18] *Id.*
[19] *Id.* at ¶ 13.
[20] *Id.* at ¶ 15.
[21] *Id.*

**B. The State.**

Primarily, the State emphasizes that this Court should give great deference the magistrates' probable cause determinations, considering them as a whole in a practical, commonsense manner while refraining from engaging in a hypertechnical analysis of their separate allegations.[22] As to the residential search, the State focuses on paragraph 5 of the affidavit in which S.Cpl. Johnson asserts that he knows through prior experience that "individuals engaged in this type of forgery will frequently utilize computers, printers and other pieces of technology to create forged documents."[23] From this statement the State posits that "[i]t is reasonable for the issuing magistrate to infer that if a person is selling fictitious documents that the documents and/or technology used to create those documents would be in the residence."[24]

The State contends that there was sufficient probable cause to believe that Tucker's DNA would be found on the seized firearms because: (1) only Redden and Tucker were present when the residence search warrant was executed; (2) the seized firearms were found in what appeared to be an unused bedroom; (3) the ammunition was found in the closet of a second story bedroom that had documents "for Tucker" inside the bedroom; (4) the ammunition that was found matched the calibers of both

---

[22] State's Resp. at ℙ 17, D.I. 17.
[23] *Id.* at ℙ 21 (quoting Residence Warrant, at ℙ 5).
[24] *Id.*

seized firearms.[25] In the State's view, these facts led to a practical and proper probable cause determination by the magistrate.[26]

Lastly, the State asserts that in S.Cpl. Johnson's experience individuals who possess firearms frequently touch them and then may transfer skins cells to those firearms.[27] In fact, S.Cpl. Johnson stated that he had conducted prior investigations in which DNA trace samples had been recovered and matched to buccal swabs.[28]

## IV. STANDARD AND SCOPE OF REVIEW

When a defendant challenges the validity of a search warrant, he has the burden of establishing by a preponderance of the evidence that the challenged search or seizure was unlawful.[29] Where a magistrate has determined that adequate probable cause exists, that determination should be given great deference.[30] Nonetheless, a reviewing court must determine whether "the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances…."[31]

---

[25] *Id.* at ¶ 25.
[26] *Id.* ¶ 26.
[27] *Id.* at ¶ 30.
[28] *Id.*
[29] *State v. Sisson,* 883 A.2d 868, 875 (Del. Super. Ct. 2005), *aff'd* 903 A.2d 288 (Del. 2006).
[30] *Id.*
[31] *LeGrande v. State,* 947 A.2d 1103, 1108 (Del. 2008).

The Delaware Constitution provides that a search warrant cannot be issued "unless there is probable cause supported by oath or affirmation."[32] In furtherance of this constitutional provision, 11 *Del. C.* § 2306 provides:

> The application for a search warrant shall be in writing, signed by the complainant and verified by his oath or affirmation. It shall designate the house, place and conveyance or person to be searched and he owner or occupant thereof (if any) and shall describe the things or persons sought as particularly as may be and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance, or person designated and shall recite the facts upon which such suspicion is founded.[33]

The Delaware Supreme Court has held consistently that § 2306 contemplates a four-corners test for probable cause.[34] That standard requires that "sufficient facts must appear on the face of the affidavit so that an appellate court can verify the factual basis for the judicial officer's determination regarding the existence of probable cause."[35] Thus, the affidavit "must set forth adequate facts for a neutral

---

[32] Del. Const. art. 1, § 6. "Section 6. The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person ot thing, shall issue without describing them as particularly as may be, nor then, unless there is probable cause supported by oath or affirmation."

[33] 11 *Del. C.* § 2306.

[34] *Dorsey,* 761 A.2d at 811 (citing *Pierson v. State,* 388 A.2d 571, 573 (Del. 1975)).

[35] *Id.*

judicial officer to form a reasonable belief … that seizable property would be found in a particular place or on a particular person."[36] The Court does not take a hypertechnical approach in evaluating a search warrant, preferring a common sense interpretation.[37] The affidavit must be "considered as a whole and not on the basis of separate allegations."[38] "A neutral and detached magistrate may draw reasonable inferences from the factual allegations in the affidavit."[39]

## V. DISCUSSION

### A.   The Residence Warrant.

The only mention of 2 Glenrock Drive appears in paragraph 3 of the affidavit which states that Redden's probation officer reported that Redden's "current probation address is 2 Glenrock Drive Claymont De 19703."[40] In support of probable cause for a nexus to that residence, the State relies entirely on an inference it argues should be drawn from paragraph 5 – "It is reasonable for the issuing magistrate to infer that if a person is selling fictitious documents and/or technology to create those documents would be located at their residence."[41] Paragraph 5 reads in part, "I [S.Cpl. Johnson] also know through prior experience that individuals

---

[36] *Id.* (citing *Pierson,* 388 A.2d at 574).
[37] *Id.* (citing *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989); *Jensen v. State*, 482 A.2d 105, 110-11 (Del. 1984)).
[38] *Id.* (quoting *Gardner,* 567 A.2d at 409 (quoting *Jensen,* 482 A.2d at 111)).
[39] *Sisson,* 903 A.2d at 296.
[40] Residence Warrant at ℙ 3.
[41] State's Resp, at ℙ 21.

engaged in this type of forgery will frequently utilize computers, printers and other pieces of technology to create the forged documents."[42] While it would have provided stronger support for the existence of probable cause had S.Cpl. Johnson stated that his prior experience located those pieces of technology in the target's residence (if that were the case), giving great deference to the issuing magistrate, the Court finds it reasonable for her to infer the objects would be located in the residence. While computers and printers certainly are found in a variety of locations, many are located in residences. Certainly, keeping the equipment in his residence would have allowed Redden to conceal his criminal activity from others to a far greater extent than using other more public technological devices. Our Courts have framed the question as "whether, based upon the specific facts alleged within the affidavit's four corners, would one *normally* expect to find those items at that place."[43] The Court finds that it would be "normal" to expect to find computer, printers, and other pieces of technology capable of creating forged documents in Redden's residence. Thus the magistrate's determination of probable cause was reasonable.

## B.  The DNA Warrant.

---

[42] Residence Warrant at ⁋ 5.

[43] *Dorsey,* 761 A.2d at 813 (emphasis in original) (finding it "illogical for the State to argue that it is 'normal' to expect to find the murder weapon missing from a crime scene concealed in the automobile of the first person to discover the murder victim's body").

The DNA warrant requires a different conclusion. In support of his request for Tucker's DNA, S.Cpl. Johnson states:

> I know through prior training and experience that individuals who possess firearms frequently touch the firearms. I also know that when handling the firearms, individuals, **may possibly** transfer skin cells from their hands to the objects they are handling. I know that the objects touched **may possibly** then retain DNA samples from the subjects who possessed them and/or touched them. I have conducted prior investigations involving firearms in which DNA trace samples have been recovered from a firearm and were able to be matched to a DNA Buccal Sample taken from a suspect by the State of Delaware Division of Forensic Sciences.[44]

In its response, the State posits that the test for probable cause "requires only that a probability, and not a prima facie showing, of criminal activity be established."[45] The Delaware Supreme Court has recognized that while "t]he probable cause standard is incapable of precise definition…because it deals with probabilities and depends on the totality of the circumstances,"[46] "[t]he substance of all probable cause definitions is a "reasonable ground for belief of guilt, which must be particular to the person."[47]

---

[44] DNA Warrant at ℙ 7.
[45] State's Resp. at ℙ 21 (quoting *Jensen,* 482 A.2d at 112).
[46] *Stafford v. State,* 59 A.3d 1223, 1229 (Del. 2012) (quoting *Lopez v. State*, 861 A.2d 1245, 1248 (Del. 2004)).
[47] *Id.* (quoting *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)).

Here, S.Cpl. Johnson wrote that individuals "may possibly" transfer skin cells from their hands to objects they touch.[48] Then, some of those skin cells which might possibly have been transferred to the firearms "may possibly" be retained on the firearms.[49] "Possible" is defined as:

> 1a:  being within the limits of ability, capacity, or realization…
>
> b:  being what may be conceived, be done, or occur according to nature, custom, or manners…
>
> 2a:  being something that may or may not occur…
>
> b:  something that may or may not be true or actual…
>
> 3:  having an indicated potential.[50]

It is not being hypertechnical to suggest that words matter. All the affidavit suggests is that an event – the presence of DNA samples identifiable as Tucker's being on the firearm – is within the realm of possibility. But, that event can only occur if some preceding event, which likewise is merely within the realm of possibility, also occurs. That preceding event is Tucker leaving skin cells from his hands on a firearm. Both of those events are merely possible and may or may not

---

[48] DNA Warrant at § 7.
[49] *Id.*
[50] MERRIAM-WEBSTER'S THE NEW COLLEGIATE DICTIONARY, http://www.merriam-webster.comdictionary/possible.

occur according to the language of the affidavit. And, both of those mere possibilities can only occur if Tucker actually touched one of the firearms.

The initial condition precedent that Tucker touch one of those firearms is not based on direct observation, but is inferential. Still, based on the following facts, it is sufficient to establish probable cause to find that Tucker touched at least one of the firearms or ammunition: (1) the firearms were located in a second story unoccupied front bedroom;[51] (2) the ammunition was located in the closet of a different bedroom "which had documents for Tucker inside the room;"[52] (3) the .25 caliber and 9mm ammunition matched the firearms found in the front unoccupied bedroom;[53] (4) Tucker was somewhere on the second floor when the Residence Warrant was executed;[54] and (5) both Tucker and Redden had prior weapons convictions.[55] Thus, the dots connecting Tucker to the firearms are that he was present on the same floor of the residence where the weapons and ammunition were found; documents "for" him were found in the room where the ammunition was located; the .25 caliber and 9mm ammunition could be discharged from the weapons; and he had a prior conviction for illegally possessing a firearm. That information,

---

[51] DNA Warrant, at ⁋ 6.
[52] *Id.*
[53] *Id.* at ⁋⁋ 5, 6.
[54] *Id.* at ⁋ 4.
[55] *Id.* at ⁋ 8.

while not overwhelming, is sufficiently persuasive for the magistrate to have found probable cause.

The affidavit falls short, however, in establishing probable cause that Tucker's DNA would be found on the firearms. It establishes only that, if Tucker handled the firearms, he "may possibly" have transferred skin cells to the weapons. Then, even if that mere possibility came to fruition, the firearms only "may possibly" retain the DNA samples. Compounding "may possiblies" makes the likelihood of identifying Tucker's DNA on the firearms less likely, not more so.[56] Such speculation does not allow a neutral and detached magistrate to form a reasonable belief that Tucker's DNA would be found on the firearms.

In *State v. Campbell,*[57] the Court considered a similar challenge to a search warrant authorizing a DNA swabbing of the defendant. The defendant argued that there was no nexus between the taking of a DNA swab from him and spent shell casings found at a crime scene because, as here, no effort had been made to determine whether usable DNA was recovered from the casings.[58] The Court described the reasoning of the cases it cited holding that possession of testable DNA was a necessary prerequisite for obtaining a comparison sample from a defendant as

---

[56] For example, the likelihood of two things happening, each with a 50% chance of occurring, is only 25%.
[57] 2015 WL 59685901 (Del. Super. Ct. Oct. 5, 2015).
[58] *Id.* at *4.

"compelling."[59]  Yet, it declined to adopt such a rule for pragmatic reasons because "the determination of whether DNA exists on an object is not an easy or quick process.  And in an underfunded and resource-limited criminal justice system, to mandate such a finding is simply unrealistic."[60]  Ultimately, the Court determined the issue was moot because no usable DNA was recovered from the casings.[61]  While the Court agrees that the reasoning of those cases requiring that law enforcement possess a testable DNA sample before seeking a defendant's DNA seems to have merit, the record here is insufficient to dismiss the Campbell Court's pragmatic considerations to the extent they remain valid, or even relevant in light of the constitutional and statutory questions posed.[62]

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Evidence is **GRANTED.**

**IT IS SO ORDERED.**

/s/ Ferris W. Wharton
Ferris W. Wharton, J.

---

[59] *Id.* (*See* cases collected at n. 18).
[60] *Id.* at *5.
[61] *Id.* at *6.
[62] Were the Court to consider such a challenge in the future, it would be helpful to know, for example, how often usable DNA is recovered from firearms.  It has been the Court's experience that in cases where DNA is not found on a firearm, the State regularly presents the testimony of a forensic services unit officer to explain, in that officer's experience, how infrequently DNA is recovered from firearms.  The Court would be interested in how the State reconciles its position here with the evidence it presents in cases where no DNA is found.